## MERIWETHER *v*. GARRETT.

Upon consideration of the legislation of Tennessee, being chapter 10 of acts of 1879, entitled " An Act to repeal the charters of certain municipal corporations, and to remand the territory and inhabitants thereof to the government of the State," approved Jan. 30, 1879; chapter 11, entitled " A Bill to establish taxing districts in this State, and to provide the means of local government for the same," approved Jan. 30, 1879; and chapter 92, entitled " An Act to collect and dispose of the taxes assessed for municipal corporations in this State whose charters have been or may be repealed, or which may surrender their charters, and to provide for the compromise and make settlement of the debts of such distinct municipal corporations, respectively," approved March 14, 1879 (*infra*, pp. 477, 479, 490), the court *holds*: —

1. Property held by the city of Memphis for public uses, such as public buildings, streets, squares, parks, promenades, wharves, landing-places, fire-engines, hose and hose-carriages, engine-houses, engineering instruments, and generally all things held for governmental purposes, cannot be subjected to the payment of its debts. Upon the repeal of its charter, such property passed under the immediate control of the State, the power once delegated to the city in that behalf having been withdrawn.

2. The private property of individuals within the limits of the territory of the city cannot be subjected to the payment of the debts of the city except through taxation.

3. The power of taxation is legislative, and cannot be exercised otherwise than under the authority of the legislature.

4. Taxes levied according to law before the repeal of the charter, other than such as were levied in obedience to the special requirement of contracts entered into under the authority of law, and such as were levied under judicial direction for the payment of judgments recovered against the city, cannot be collected through the instrumentality of a court of chancery at the instance of the creditors of the city. Such taxes can only be collected under

authority from the legislature. If no such authority exists, the remedy is by appeal to the legislature, which alone can grant relief. Whether taxes levied in obedience to contract obligations, or under judicial direction, can be collected through a receiver appointed by a court of chancery, if there be no public officer charged with authority from the legislature to perform that duty, is not decided, as the case does not require it.

5. The receiver and back-tax collector appointed under the authority of the act of March 13, 1879, is a public officer, clothed with authority from the legislature for the collection of the taxes levied before the repeal of the charter. The funds collected by him from taxes levied under judicial direction cannot be appropriated to any other uses than those for which they were raised. He, as well as any other agent of the State charged with the duty of their collection, can be compelled by appropriate judicial orders to proceed with the collection of such taxes by sale of property or by suit, or in any other way authorized by law, and to apply the proceeds upon the judgments.

6. The bills in this case not having been framed with a view to any such purpose, cannot be amended so as to obtain relief against such receiver and back-tax collector.

APPEAL from the Circuit Court of the United States for the Western District of Tennessee.

On Feb. 28, 1879, Robert Garrett and others filed their bill in the court below against the City of Memphis, Tennessee, setting forth that they are the owners and holders of overdue and unpaid bonds and coupons and other evidences of her indebtedness to the amount of more than $100,000, upon much of which indebtedness they have secured judgments and writs of *mandamus* to compel the collection thereof, but that, owing to the malfeasance, misfeasance, and incompetency of her officers charged with the collection of taxes, a large proportion of those assessed and levied for many years past, and amounting to at least $2,500,000, are uncollected and unpaid, by reason of which she is insolvent; that her persistent failure to collect them is a fraud upon her creditors; that during each of the years 1875, 1876, 1877, and 1878 a large levy of taxes was made in obedience to writs of *mandamus*, but that by reason of her failure during each of those years to collect more than three-fifths of the amount thereof, and also of the taxes assessed and levied for general purposes, a large amount represented by the judgments remains unpaid; that the special levies so made, in which the complainants have a large interest, constitute a trust fund for the payment of their judgments which can only be used for that purpose, and that the

city's neglect and failure to press the collection thereof is a fraud upon them, against which a court of equity will relieve; that, outside of the power of a court to appoint a receiver to take charge of the assets of the city and collect the taxes so levied, it is, by an act of the legislature of Tennessee passed March 19, 1877, entitled "An Act to enable municipal corporations having more than thirty-five thousand inhabitants to settle their indebtedness," being chapter 71 of the acts of 1877, provided that upon the application of any person or persons who are the holders of any past-due and unpaid bonds, coupons, or other indebtedness, not less in amount than $100,000, of any municipal corporation having more than thirty-five thousand inhabitants, it shall be the duty of the Court of Chancery to appoint a receiver for such corporation; that the city's indebtedness, represented by judgments and otherwise, amounts to over $850,000, and that her population exceeds thirty-five thousand persons. They, therefore, pray that a receiver be appointed to take charge of her assets, including her tax books and bills for past-due and imposed taxes, and that he be clothed with the power conferred by said act of March 19, 1877, and such other power as may be necessary to enable him to collect all outstanding indebtedness and claims of every kind due to her, and to settle her debts, particularly those due to the complainants.

Chapter 71 of acts of 1877 enacts as follows:—

"SECT. 2. That the power to levy taxes of every description, and for any and every purpose whatever, is hereby taken away from said municipal corporations, and each and every officer and representative thereof, and said taxing power lodged in the legislature of the State, and not elsewhere; and that by virtue of article 11, section 9, of the Constitution of the State, in addition to the powers already conferred, the Chancery Court, for the purpose of settling the indebtedness of Memphis and other municipal corporations containing more than thirty-five thousand inhabitants, may appoint a receiver, and exercise such other powers as are hereinafter set forth.

"SECT. 3. That upon the application of any person or persons, who are the holders and owners of any past-due and unpaid bonds, coupons, or other indebtedness of said municipal corporations, not

less in amount than one hundred thousand dollars, it shall be the duty of the Chancery Court to appoint a receiver for said municipal corporations, who, as the officer of the court, and not otherwise, shall, under the order and instruction of the court, act for such municipal corporations.

"SECT. 4. That said receiver, together with two other citizens and property holders of said corporation, to be appointed by the court, shall constitute a commission to settle and compromise the indebtedness of said municipal corporation, by funding the same, at a rate not exceeding fifty-five cents in the dollar on judgments, and not exceeding fifty cents in the dollar for bonds or coupons past due, and at a less rate for the less valuable class of said indebtedness; and upon their action being confirmed by the court, the court shall direct the receiver to execute the necessary and proper compromise bonds and contracts; which bonds, when so executed, shall to all intents and purposes be the valid and binding obligations of said corporation; but it is understood and agreed that the holders of any of the bonds issued by the receiver as provided in this act shall have the option, after two years, to fund or exchange them at par, into bonds payable thirty years after the date of their issue, and bearing interest at the rate of six per cent per annum; said bonds shall be of the denomination of one thousand dollars each, and numbered consecutively from one to twenty-five hundred; the total amount of bonds issued under this act shall not exceed two and one-half millions of dollars.

"SECT. 5. That in order to enable said commission to make a settlement of said municipal indebtedness, as contemplated, it is hereby enacted: —

"1. That all bonds and matured coupons and judgments, and all paving scrip certificates issued by said corporation, and all receipts for money paid by tax-payers to paving contractors for making Nicholson and stone pavement, &c., by virtue of any contracts with said corporation, may be funded at such a rate not exceeding the maximum above mentioned, and into such bonds, bearing not exceeding six per cent per annum interest, as may be agreed on between the parties, the holder, and said commission.

"2. That all matured bonds and coupons, issued by virtue of any agreement made in pursuance of this act, shall be receivable for taxes, city dues, and indebtedness of every kind.

"3. That said municipal corporations are hereby prohibited from issuing scrip at any time, or bonds, while any bonds issued under

this act are outstanding, except such as may be issued in exchange, as hereinbefore provided in section 4 of this act.

"4. That, hereafter, for said municipal corporations, there shall not be levied a higher rate of taxation for general purposes, as defined in the charter, than one per cent for the next five years, and at no time thereafter for said purposes a tax exceeding one dollar and twenty-five cents on the hundred dollars.

"5. That an ample interest and sinking-fund tax shall be levied annually, and collected, to meet the maturing interest and retire and pay the bonds issued under this act, and that this tax shall be faithfully applied to the object proposed. The sinking-fund tax shall be paid into the hands of three sinking-fund commissioners, and the interest tax shall be paid into the hands of three interest commissioners; each and all of said sinking-fund and interest commissioners shall be appointed by the court, and shall be citizens of established integrity and responsibility, who shall give bond in sufficient amounts to cover the funds coming into their hands, and take an oath to faithfully execute their trusts; said bonds to be fixed by the court.

"6. That the provisions of this act may be made a part of the contract with the holders of any bond or coupon issued by reason of any agreement made under this act.

"7. That so much of sects. 38, 63, 64, and 66 of an act passed March 20, 1875, and all other acts as are in conflict with the provisions of this act, are hereby expressly repealed.

"SECT. 6. That the court shall appoint the interest and sinking-fund commissioners, and supply all official vacancies as they may occur in the different municipal departments, which, as to the ordinances affecting the same and in every other respect, remain unaffected, except in so far as they may conflict with the enforcement of the provisions of this act, in which event the court will so order as to carry out the true intent and purposes of this act: *Provided, however*, that all the offices not abolished by this act be filled by a popular vote, for the term of two years, at the time designated in the charter for the next regular municipal election.

"SECT. 7. That to carry into effect the true intent and provisions of this act, the legislature of the State hereby levies an annual tax of one dollar and sixty cents on each one hundred dollars' worth of taxable property and values within said municipal corporation (including the school tax, which shall not exceed ten cents), to be applied under the order and directions of the court in the payment of current expenses, interest on compromise bonds,

and the extinguishment of the indebtedness of said municipal corporations.

"SECT. 8. That this act shall take effect, and not before, when the sum of the tax *mandamuses* outstanding against any one of said municipal corporations shall amount in the aggregate to the sum of ($850,000) eight hundred and fifty thousand dollars.

"Passed March 19, 1877.   Approved March 23, 1877."

On the day next after that upon which the complainants' bill was filed, the legislature of Tennessee passed the following acts : —

"CHAPTER 10, OF ACTS OF 1879.

"*An Act to repeal the Charters of certain Municipal Corporations, and to remand the Territory and Inhabitants thereof to the Government of the State.*

"SECT. 1. Be it enacted by the General Assembly of the State of Tennessee, that an act passed Dec. 1, 1869, entitled 'An Act to reduce the charter of the city of Memphis and the several acts amendatory thereof into one act,' being chapter 26 of the private acts of 1869 and 1870, also chapter 47, to the public acts of 1873, entitled 'An Act to amend the charters of all incorporated towns and cities in the State,' passed March 18, 1873; also, an act entitled 'An Act to incorporate the town of Memphis,' passed Dec. 9, 1826 ; also, an act entitled 'An Act to extend the limits of the corporation of the town of Memphis, and for other purposes,' passed Oct. 19, 1832; also, an act entitled 'An Act to amend the several acts incorporating the town of Memphis,' passed Dec. 7, 1843 ; also, an act entitled 'An Act to reduce the several acts incorporating the town of Memphis into one act, and to amend the same,' passed Jan. 11, 1848; also, an act entitled 'An Act to incorporate into one act the several acts incorporating the city of Memphis and the town of South Memphis,' passed Jan. 6, 1846, and Jan. 21, 1848, and to 'unite the said towns into one, and extend the boundaries thereof,' passed Dec. 3, 1849; also, the section of an act entitled 'An Act to amend an act entitled An Act to incorporate the town of Tazwell,' passed Jan. 2, 1830, passed Jan. 28, 1852; also, an act entitled 'An Act to amend the charter of the city of Memphis,' passed Feb. 29, 1856 ; also, an act entitled 'An Act to amend the charter of the city of Memphis, and for other purposes,' passed Feb. 20, 1860; also, an act entitled 'An Act to amend the charter of the city of Memphis,' passed Nov. 24, 1866; also, an act passed in amend-

ment of the foregoing acts, and also any other acts creating into a body politic and corporate the inhabitants of a certain territory lying within the county of Shelby, by the name of the City of Memphis, the Mayor and Aldermen of Memphis, or other corporate name whatever, or acts amending the said acts of incorporations be, and the same are hereby, each and every one of them, repealed, and all offices created and held under and by virtue of any of said acts are abolished.

" SECT. 2. That the charters and amendments thereof of all municipal corporations within the State, having a population of thirty-five thousand inhabitants or over, by the Federal census of 1870, be, and the same are hereby, repealed, and all municipal offices held under them are abolished.

" SECT. 3. That the charters and amendments thereof of all municipal corporations within this State having thirty-five thousand inhabitants or over, at the date of the passage of this act, be, and the same are hereby, repealed, and all municipal offices held thereunder are abolished. The governor of the State will ascertain and declare, by proclamation, to what corporations this section applies; said proclamation shall be conclusive evidence of its truth, and shall be made within ten days from the passage of this act.

" SECT. 4. That all of the sections, from section 33 to section 80, both inclusive, of an act entitled 'An Act to regulate and organize municipal corporations of certain population, and for the increase and diminution of their powers,' chapter 92, approved 23d March, 1875, and all other acts and parts of acts in conflict with this act, be, and the same are hereby, repealed; all the other sections of said chapter 92, and especially section 81 of said chapter, being left in full force; and the population within the territorial limits as now defined, and the territory of all municipal corporations heretofore governed under and by virtue of said repealed sections 33 to 80, inclusive, are hereby resolved back into the body of the State, and all offices held under and by virtue of said repealed sections are hereby abolished; and all power of taxation, in any form whatever, heretofore vested in or exercised by the authorities of said municipal corporations by virtue of any of the acts of incorporation hereinbefore recited, or otherwise, is for ever withdrawn and reserved to the legislature; and the public buildings, squares, promenades, wharves, streets, alleys, parks, fire-engines, hose and carriages, horses and wagons, engine-houses, engineer instruments, and all other property, real and personal, hitherto used by such corporations for municipal purposes, are hereby transferred to the custody and con-

trol of the State, to remain public property, as it has always been, for the uses to which said property has been hitherto applied. And no person holding office under and by virtue of any of said repealed sections, or any of the acts above recited, shall, from and after the passage of this act, exercise or attempt to exercise any of the powers or functions of said office.

"SECT. 5. That this act take effect from and after its passage, the public welfare requiring it.

"Passed Jan. 29, 1879.   Approved Jan. 31, 1879."

"CHAPTER 11, ACTS OF 1879.

"*A Bill to establish Taxing Districts in this State, and to provide the Means of Local Government for the same.*

"SECT. 1. That the several communities embraced in the territorial limits of all such municipal corporations in this State as have had or may have their charters abolished, or as may surrender the same under the provisions of this act, are hereby created taxing districts, in order to provide the means of local government for the peace, safety, and general welfare of such districts.

"SECT. 2. That the necessary taxes for the support of the governments thus established shall be imposed directly by the General Assembly of the State of Tennessee, and not otherwise. In administering the affairs, and for providing the means of local government in said districts, the following agencies and governing instrumentalities are hereby established : —

"1st, A board of fire and police commissioners, to be selected and qualified in the manner hereafter provided.

"2d, A committee on ordinances or local laws, to be known as the 'Legislative Council of the Taxing District,' and which shall consist of the commissioners of the fire and police board, and the supervisors of the board of public works.

"3d, A board of health, to consist of the chief of police, a health officer, and one physician who shall have been in active practice for the period of five years next preceding his appointment, who shall be an inhabitant of the taxing district, and for five years a resident of the county, and who shall be *ex officio* president of the board.

"4th, A board of public works, to consist of five supervisors of public works, three of whom shall be chosen by the qualified voters of the people of the taxing district, and two appointed as hereinafter provided, and shall serve for a term of two years.

" SECT. 11. That the diversion of any portion of any of said taxes, or wharfage dues, or other funds, from the purpose for which they were levied, by any of the commissioners, or by the trustee, shall be a felony, for which the guilty party upon conviction shall suffer imprisonment in the Penitentiary at hard labor for two years.

" SECT. 12. That said commissioners shall not issue any bonds, notes, script, or other evidences of indebtedness, and shall in no event contract for work, or material, or services, in excess of the amount of tax levied for such work, material, or service for that year, and parties contracting with said commissioners for work, material, or services shall look alone to the tax for that purpose for that year, and no subsequent tax shall be levied to meet the deficit, and no property, real or personal, held by said commissioners for public use, shall ever be subject to execution or attachment, or seizure under any legal process, for any debt created by said commissioners, and all taxes due, or moneys in the hands of the county trustee, or on deposit, shall be exempt from seizure under attachment, execution, garnishment, or other legal process. And said commissioners and said trustee and other governing agencies employed by this act are expressly prohibited from levying any taxes for any purpose, that power being reserved to the legislature, and no writ of *mandamus* or other process shall lie to compel them to levy any taxes; nor shall the said commissioners or said trustee, nor the local government created by this act, pay or be liable for any debt created by said extinct corporation, nor shall any of the taxes collected under this act ever be used for the payment of any of said debts.

. . . . . . . . .

" SECT. 14. That the fire-engines, hose and carriages, horses and wagons, engine-houses, public buildings, public squares, parks, promenades, wharves, streets, alleys, engineer instruments, and all other property, real and personal, hitherto used by such corporations for purposes of government, are hereby transferred to the custody and control of said board of commissioners, to remain public property, as it has always been, for the uses to which said property has been hitherto applied, and that all indebtedness for taxes or otherwise, whether in litigation or otherwise, due to the said municipalities, shall vest in and become the property of the State, to be disposed for the settlement of the debts of said extinct municipalities as shall be hereafter provided by law, and all suits now pending shall be prosecuted to final determination under the provisions

of this act, without change of parties, and suits brought by said tax-ing districts shall be brought in the name of the president of fire and police commissioners : *Provided, however*, that the taxes here-tofore assessed as privilege taxes, and set apart for the payment of the police and firemen, shall be paid out as collected, under the provision of this act, to the said police and firemen.

    ·      ·      ·      ·      ·      ·      ·      ·

    " SECT. 25. That this act shall take effect from and after its passage.

    " Passed Jan. 29, 1879.   Approved Jan. 31, 1879."

    On February 7 the complainants, by leave of the court, filed an amended and supplemental bill, to which the City of Memphis, John R. Flippin, mayor of the city, and W. J. Chase, W. Hewitt, Jamer Elder, Simon Green, H. G. Dent, Marcus Jones, W. H Brown, J. W. Moores, W. Benjes, George Haesinger, composing the board of aldermen of Mem-phis, James Bohan, D. T. Goodyear, W. P. Proudfit, Charles Quentel, Sen., J. H. Surdam, J. H. White, W. H. Bates, M. Selig, L. L. Lawhorn, P. O. Wood, Andrew Renkert, Herman Caro, Thomas Boyle, Peter Tracey, W. J. Crosbie, W. O. Har-vey, Thomas Barrett, P. M. Patterson, L. D. Grant, William Bradford, composing the board of common councilmen of the city, altogether constituting the general council of the city, and as trustees and representatives of the corporators; also George B. Fleece, trustee of Shelby County, Tennessee, and *ex officio* tax-collector of the city, the German National Bank of Memphis, J. W. Moores, former tax-collector of the city, and Joseph Uhl, clerk of the Circuit Court of Shelby County, Ten-nessee, all residents and citizens of that county, — were made defendants.   The bill, after reaffirming the averments of the original bill, charges, among other things, that the complain-ants, as creditors of the corporation and having valid debts against it, are not and cannot be deprived of the vested rights secured to them by previous legislation ; that said chapters 10 and 11 of the acts of 1879, so far as they attempt to impair those rights or divert the assets of the corporation from the reach or control of its creditors, are unconstitutional and void. The bill, after charging that upon the passage of said chap-ters 10 and 11 the mayor and other officers of the city who

were charged by law with the collection of taxes, and who held
the same in trust to be applied in satisfaction of the complain-
ants' debts, abandoned their offices and trusts and left the
latter unexecuted; that before the repeal of the charter of the
city there was in the hands of certain of the defendants a large
amount belonging to the special trust and *mandamus* funds;
and that all the property of the city, real and personal, includ-
ing past-due and unpaid taxes, constitutes assets for the benefit
of her creditors which should be brought in and marshalled
for the payment of her debts, — prays that it may be taken and
considered as a general creditor's bill for all who may come in
within a time to be limited, and that a receiver be appointed
and empowered and directed to take charge of all the tax
books and papers of the city, and her records and books of
every description, together with all the tax-books, bills and
accounts for all taxes theretofore levied by her for all pur-
poses which have not been collected and are yet due and
unpaid; that he be empowered to collect the same by distress-
warrants, or in any manner deemed expedient by the court,
and bring or prosecute any suit or suits in any court for the
collection of the same; that, until the rights of all persons be
determined, he be instructed and required to keep separate ac-
counts of each class of taxes collected as appear on the various
tax-books of the city; that he be empowered to take charge
of all money now on hand which has been collected from any
source for taxes, rents, or otherwise; that all parties be re-
quired to pay the said funds to him, of which he shall keep
separate accounts, and pay the same out to the parties enti-
tled under the order of the court; that he be directed to take
charge of all the real estate of the city of whatever description
and wherever situated in which she has any interest, equitable
or legal; that he take possession of all the personal property
of every kind belonging to the city at the time of her dissolu-
tion, but that, for the time being and until the rights of par-
ties shall have been determined and some arrangements be
made, the fire-engines, hose and horses, and paraphernalia of
the fire department be not interfered with so as to destroy or
impair its efficiency; that when the assets are collected they
be disbursed under the order of the court to the parties to

whom they belong in law, or as the different parties are entitled; that he be empowered to sell any part of said assets from time to time, or all of the same, together with such further powers and instructions as may from time to time be necessary to bring other parties before the court; that, if the present assets are not sufficient to pay all the debts, assessments be made upon all the corporators and property in the city for any claims that may remain unpaid of said debts, whether due or not, and that judgments be rendered against said parties for amounts found due; that such accounts be taken to ascertain the amounts of debts as may be deemed expedient, and complainants' debts paid.

Jan. 30, 1879, Hopkins Loudon filed his bill against the city of Memphis to recover money due for laying pavements. On February 6 he filed an amended bill, averring that since filing his original bill he had recovered a judgment for the amount of his claim.

Bills were filed by other judgment creditors of the city, as follows: —

February 3, by the Ahrens Manufacturing Company against George B. Fleece, trustee of Shelby County, D. T. Goodyear, president of the common council and ex officio mayor, J. C. Neely, city treasurer, and James A. Newsom, city comptroller.

February 7, by Tallmadge E. Brown against the city of Memphis, John R. Flippin, its former mayor, Marcus Jones, the president of the board of aldermen, D. T. Goodyear, the chairman of the common council, James C. Neely, former city treasurer, the German National Bank, the First National Bank, the State National Bank, Joseph Uhl, clerk of the Circuit Court of Shelby County, George B. Fleece, county trustee of Shelby County, Benjamin F. Coleman, and James W. Moores, all citizens and residents of Shelby County.

February 10, by Fairman Rogers and others against the city, said Flippin, Jones, Goodyear, Neely, James A. Newsom, late comptroller, James H. Humphreys, late city engineer, Michael McFadden, late chief of the fire department, W. A. McCloy, late city register, James W. Moores, late back-tax collector, Joseph Uhl, clerk of the Circuit Court of Shelby County, George B. Fleece, county trustee of Shelby County,

the German National Bank, the State National Bank, and the First National Bank, John F. Frank and D. T. Porter, W. W. Guy and John Overton, Jr., styled the board of fire and police commissioners of the taxing district of Memphis, and against all other persons and corporations who have an interest in the subject-matter of the suit and might make themselves parties thereto.

February 12, the court ordered that the several causes be consolidated, and appointed T. J. Latham receiver. The order directs that he "first enter into a bond of the penal sum of fifty thousand dollars, with two or more securities, to be approved by the court, conditioned for the faithful performance of his duties as such receiver. He will also take an oath faithfully and impartially to discharge the duties of his said office. Such bond and oath shall be filed and remain of record in court here.

"After so qualifying, the said receiver will demand and receive and take possession of all the assets and property of the city of Memphis, including real and personal property and debts due to it, and taxes due and owing to it, except the taxes appearing on the tax-books for the year 1878, for which special provision is herein made, and except, also, the public highways of the city, the public squares, the public landings and wharves, the engine-houses, the fire-engines, and the horses belonging to the fire department, the hose, the hose-carriages, and the other property and appurtenances of the said department, the hospital, and the property and appurtenances belonging thereto or used in connection therewith, the horses, wagons, tools, and implements and other property used in connection with and necessary to the engineers' department of the city of Memphis, the property belonging to and used in connection with the police department of the city, and the taxes heretofore levied for the support of the public schools of the city; all which excepted articles and property are excluded from the operation of this order, and will not be taken possession of or interfered with by the said receiver until the further order of the court.

"The said receiver will also take possession of all the tax-books of the city of Memphis whereon unpaid taxes due it are

charged, except the tax-books for the year 1878, and the person or persons having the same in charge will at once, on his demand, surrender the same to him.

" He also will take possession and control of all the safes, books, papers, desks, office furniture, and other property belonging to the offices of mayor, comptroller, register, treasurer, tax-collector, inspector, city attorney, necessary to the discharge of his duties as receiver, and of the buildings wherein the general council of the city has heretofore assembled, and the property in or belonging to such buildings not previously herein excepted from the operation of this order, and the large safe in the mayor's office, and will safely keep the same, subject to the order of the court herein; and the person or persons having possession or control of the said property, or any part thereof, are hereby required to surrender the same to him on demand.

" And the said receiver will, as soon as he can conveniently, make and file a full and true inventory of all the property of every description which may come to his control or possession as such receiver.

" The defendant, George B. Fleece, as county trustee of Shelby County, from time to time as he collects taxes levied by the city of Memphis for the year 1878, except taxes levied for the support of the public schools, will at once pay over the sums he collects to the said receiver, in the lawful money of the United States, taking his receipt therefor, which shall be a protection and discharge to him for the sums so paid. He will also at once, on the demand of the said receiver, pay to him all the moneys he has on hand collected for and on account of taxes levied by the city of Memphis for the year 1878, except sums collected on account of taxes levied for the support of the public schools, and will take his receipt therefor, which shall be a protection and discharge for the amount so paid.

" The defendant, James C. Neely, as former city treasurer of the city of Memphis, and the German National Bank of Memphis, will at once, on the demand of the said receiver, turn over to him all the money in his hands or on deposit in the said bank received by him on the account of the city of Mem-

phis, except moneys received for taxes levied for the support of public schools, and take his receipt therefor, and such payment shall be a full acquittance and discharge for the sums so paid.

" The defendant, John R. Flippin, as late mayor of the city of Memphis, will, on demand of the said receiver, pay over to him any money and deliver to him any property he has belonging to the said city, except the large safe in the mayor's office, and the papers and vouchers not necessary for the receiver in the discharge of his duties, and take his receipt therefor, which shall be a complete acquittance and discharge for the sum so paid and the property so delivered.

" The defendant, Joseph Uhl, as clerk of the Circuit Court of Shelby County, will at once, on demand of the said receiver, pay over to him the money he has on hand received on the account of redemption of property sold for taxes due the said city, except such money as may have been received on account of taxes levied for the support of the public schools, and take his receipt therefor, which shall be an acquittance and discharge for the sum so paid, and he will hereafter from time to time, as he receives other moneys on the said account, pay over the same as aforesaid, with the exception aforesaid, to the said receiver, and take his receipt therefor, which shall be an acquittance and discharge for the sums so paid.

" The defendant, James W. Moores, will at once, on the demand of the said receiver, pay over to him any moneys in his hands received for or on account of taxes levied by the city of Memphis, except such sums as may have been received for taxes levied for the support of the public schools, and deliver him all the city tax-books in his hands, and take his receipt therefor, which shall be an acquittance and discharge for the sums so paid and for the said tax.

" The said receiver will at once proceed to ascertain what property, real and personal, other than that hereinbefore specified or mentioned in the bills herein, the city of Memphis owns, including such as it has become the owner of by purchases at sales for non-payment of taxes, and will take possession of such property where the possession is voluntarily surrendered, and report the same to the court, to the end that a proper disposition may be made thereof.

" In the meantime he is authorized to rent the property he may so obtain possession of from month to month, and to collect the rents, and hold the same subject to the order of the court. As soon as the said receiver is in possession of the funds already collected and on hand, and hereinbefore directed to be turned over to him, he will at once deposit the same in some solvent bank or banks in Memphis, to the credit of the clerk of this court, to be drawn out only by the order of this court, and report the same to the court, and in such report will show the amount received from each particular person on account of each particular tax, the year for which the same was levied, whether the tax on account of which the same has been paid was levied for the benefit of any particular person or persons or class of persons, and, if so, who such person or persons or class of persons are, and the proportions in which they are or claim to be entitled to share such fund or funds, and the amount thereof to which each one is or claims to be entitled.

" And, from time to time, as he hereafter receives other moneys under this order or as such receiver, he will in the manner above directed deposit the same, and on the first and third Mondays of each month the said receiver shall make and file with the clerk a report, similar to that required above, of the funds that may have been paid over to him. The said receiver, as soon as he receives the tax-books herein ordered to be delivered to him, will proceed in such manner as he may deem best to demand and collect all the unpaid taxes appearing on the said tax-books, levied by and due to the city of Memphis, in the lawful money of the United States, and keep a proper account of such collections, showing therein the particular tax or taxes from which each sum is derived, and the year for which the same was levied and the purpose for which levied.

" If he finds it necessary, the said receiver may bring actions at law or suits in equity against any party or parties owing any debt due to the city of Memphis, or any tax or taxes appearing on the said tax-books, for the recovery of the same, and in such actions or suits he may also proceed to enforce any specific lien or liens on any property, real or personal, for

the payment of such tax or taxes, and to have the same sold for the satisfaction thereof. He may also, in proper cases, employ the process of garnishment and all other proper process. He may bring the party or parties owing such tax or taxes by petition in this cause before this court, or he may sue at law in this court in proper cases.

" He may also, where he deems it best to do so, bring actions at law or suits in equity in the courts of the State, or make himself a party to any suit or suits already pending in such courts, where, by so doing, he may effect a collection of such tax or taxes, or any part thereof, and he is authorized to demand and receive and to receipt for all moneys heretofore collected, or which hereafter may be collected, on any judgment or decree heretofore rendered in favor of the city of Memphis, belonging to the said city, whether such judgment or decree is in this court or any other court of the United States, or any court of the State of Tennessee.

" He is hereby given authority to employ as many clerks and assistants as may be necessary to enable him to discharge the duties of his said office promptly and efficiently, who shall be paid a reasonable compensation out of the assets which may come to his hands, to be fixed hereafter by the court.

" The said receiver will make use of the building and offices formerly occupied for a city hall, and belonging to the city of Memphis, or such part thereof as may be necessary for his purposes, and will make use of such safes, desks, tables, chairs, and other furniture and property of the city of Memphis as he may have need of ; but he will file in court here, as soon as he can conveniently make the same, a correct and full description and inventory of all the property he may use.

" The said receiver is hereby authorized to buy and pay for the necessary books and stationery, the necessary fuel and lights, and whatever else may be necessary property to fit his office or offices for use, and to enable him efficiently to discharge the duties imposed on him ; but such expenditures shall always be subject to the control and approval or rejection of the court.

" The said receiver is also hereby authorized to insure any

property, real or personal, which may come to his hands as such receiver, where he deems it prudent to do so.

"The said receiver is also empowered to employ one or more attorneys, if necessary, to conduct the prosecution or defence of any suit or suits he may find it necessary to bring, prosecute, or defend, under the authority hereby conferred upon him. The compensation of such attorney or attorneys shall be fixed by the court hereafter, and shall be paid out of the assets which may come to the hands of the said receiver, in such manner as the court may direct.

"The several persons and corporations upon whom the process of garnishment have been served under the executions issued on the judgments of a portion of the plaintiffs in these suits, as appears by the bills herein, and who are parties hereto, are hereby directed to deliver or pay to the receiver herein appointed, on his demand as hereinbefore ordered, all the property, money, and effects in their hands or under their control, respectively, belonging to the city of Memphis, and upon their severally doing so they are hereby severally discharged as such garnishees.

"It is further ordered, that all persons having debts or claims of any character against the city of Memphis have leave to make themselves parties to these consolidated suits on or before the third Monday of May next, by severally filing petitions herein, setting forth their respective debts or claims, and that the clerk of this court at once give notice by publication in one of the daily morning papers published in Shelby County, for sixty days, that such persons are hereby required within the time aforesaid so to make themselves parties, and file their debts and claims."

By sect. 5 of chap. 84, acts of 1879, passed March 12, 1879, and approved March 13, 1879, sect. 14 of chap. 11 of the acts of that year was amended so as to read, —

"That the fire-engines, hose and carriages, horses and wagons, engine-houses, public buildings, public grounds, parks, promenades, wharves, streets, alleys, engineer's instruments, and all other property, real and personal, hitherto used by such corporations for purposes of government, are hereby transferred to the custody and control of said board of commissioners, to remain public property,

as it has always been, for the uses to which said property has hitherto been applied, and that all indebtedness for taxes or otherwise, whether in litigation or otherwise, due to the said municipalities, shall vest in and become the property of the State, to be disposed of for the settlement of the debts of said extinct municipalities, as shall be hereafter provided by law, and suits brought by said taxing districts shall be brought in the name of the President of the Board of Fire and Police Commissioners."

On March 13, 1879, the legislature passed the following act: —

### "CHAPTER 92, OF ACTS OF 1879.

" *An Act to collect and dispose of the Taxes assessed for Municipal Corporations in this State whose Charters have been or may be repealed, or which may surrender their Charters, and to provide for the Compromise and make Settlement of the Debts of such Extinct Municipal Corporations respectively.*

" SECT. 1. Be it enacted by the General Assembly of the State of Tennessee, that as to municipal corporations in this State, whose charters may have been repealed at the time this act takes effect, and, from time to time, as the charters of other municipal corporations may be repealed or surrendered, the governor of the State shall appoint an officer for such extinct corporations respectively, to be known as a receiver and back-tax collector, who shall take the oath required of other collectors of public revenue, and shall give bond with good sureties, to be approved by the county court of the county in which the extinct corporation was situated, in such sum as the county court may prescribe; and it shall be the duty of the quarterly court, at each quarterly term thereof, to see that the bondsmen continue good and adequate for the full protection of all persons interested, and for that purpose, from time to time, to require further and additional sureties whenever such court deems the same necessary for the protection of those interested.

" SECT. 2. That such receiver and back-tax collector shall make to the Chancery Court every three months a full, clear, and complete statement, showing all taxes collected and settled, and all in his hands that remain to be collected and settled. He shall, at the end of each month, pay into the treasury of the State the whole sum by him collected, less his compensation. He shall distinguish, in making such payments, the respective sources from which the

moneys paid in are derived, showing what is collected from taxes for general purposes, and what for taxes for special purposes, designating the particular or special purpose, so that the same may be kept separate in the State treasury, in order that the treasurer may pay the same according to any lien, priority, or equity, if any, which may be declared by the Chancery Court touching any of said funds, in favor of any creditor or class of creditors.

"Sect. 3. That the back-tax collector and receiver shall, as soon as appointed, enter upon the duties of his office. It shall be his duty, and he is hereby empowered, to take possession of all books, papers, and documents pertaining to the assessment and collection of the taxes embraced by this act.

"Sect. 4. That, for the purpose of collecting the revenue embraced in the provisions of this act, the receiver and back-tax collector is empowered and authorized to file a general creditors' bill in the name of the State in behalf of all creditors against all the delinquent tax-payers who owed taxes to the extinct corporation at the time of the repeal or surrender of its charter, which bill shall be filed in the Chancery Court of the county in which such extinct corporation was situated. All the said delinquents in any one county shall be embraced in one subpœna to answer, and for the same the clerk shall receive a fee of five cents for each defendant named in the subpœna except for the first, and for that, the fee allowed in other cases: *Provided*, he shall not receive exceeding twenty-five dollars for such subpœna; and the sheriff, for serving the same, shall receive for each defendant ten cents, except the first, and for that, the fee allowed for like services in other cases. Publication for non-residents shall embrace in the same publication, if practicable, all non-resident defendants, — the object being to make one proceeding embrace the whole taxes of such extinct corporation. All pending suits are to be received in the name of the State, and consolidated with the general proceedings herein provided for, and, when so consolidated, to form part of said general proceeding. The court in which said proceeding may be instituted shall have power to settle and adjust all equities, priorities, and liens, and to give all relief both to the defendants and the creditors that might be given if there were as many separate suits as there are creditors and delinquent tax-payers. Such court shall have power to enforce all liens upon property for the payment of such taxes, and to order and make all sales of property necessary to the collection of such taxes. The taxes embraced by this act, and which it provides for, are all taxes imposed by said extinct

municipalities up to the time of the repeal or surrender of their charter. The Chancery Court, in the exercise of the jurisdiction conferred by this act, shall have all the powers possessed by such courts in the administration of the estates of insolvent, natural, or corporate persons. If it shall appear that the taxes imposed in any case were excessive, the court shall have power to reduce the assessment so as to make it fair and just.

"SECT. 5. That back taxes imposed prior to the year 1875 may be settled in the valid indebtedness of such extinct municipalities, as provided by sect. 66 of an act passed March 20, 1875, entitled 'An Act to regulate and organize municipal corporations of certain population, and for the increase and diminution of their powers,' and, in addition to said act, as follows, to wit, in valid bonds, whether due or not, and due coupons, and any other valid debt of such municipality with accrued interest, whether in the shape of scrip, warrants, judgments, ledger balances, paving certificates, or receipts for money paid by back-tax payers to paving contractors, or to the said corporation for Nicholson or stone paving done under former laws and ordinances authorizing front foot assessments for paving, and the back-tax collector and receiver is hereby required to accept the same at the following rates, to wit, bonds known as compromise or funded bonds shall be received at their face value, all other bonds, scrip, certificates of indebtedness, past-due coupons, ledger balances, &c., shall be received at fifty cents on the dollar, or one-half their face value, and all judgments shall be received at fifty-five cents on the dollar of their face value: *Provided*, compromise bonds issued in lieu of any bonds which have been pronounced invalid by the Supreme Court of this State shall be excluded so far as such invalid bonds shall compose a part or the whole of such compromise bonds; and compromise bonds issued in whole or in part in lieu of bonds liable by implication, on account of over-issue or otherwise, to a similar decision of the Supreme Court, shall not be received, so far as they may be composed in whole or in part of such suspected bonds, until the validity of such suspected bonds shall be determined by the Supreme Court of the State, and the aforesaid bonds, coupons, scrip, &c., shall be received with interest added, if there be interest, in payment of taxes imposed prior to 1875, whether before or after judgment or decree against the delinquent tax-payers in satisfaction of such taxes, or by way of set-off against taxes due such extinct municipalities, whether acquired before or after suit brought against a delinquent tax-payer. But, before being required to accept the

same, such back-tax collector and receiver may, if he chooses, and if he suspect the debt not valid, or if any creditor gives him notice that it is not, then before taking it he shall, on motion in the general suit, have the question settled by the Chancellor whether such indebtedness is valid or not, and it shall be the duty of such receiver and back-tax collector to receive in payment of taxes imposed after 1874 any of the aforesaid valid indebtedness of the extinct municipality, when there is no lien or equity requiring the same to be paid in current money, and whenever any question may be raised as to the right of the tax-payer to pay taxes imposed after 1874 on the said indebtedness of the extinct municipality, the court shall determine the same on motion at the instance of the parties interested : *Provided, however*, that in every case where a bond of any kind or character, whether it be a compromise bond or other kind of bond, is received or taken up before maturity, all immatured interest coupons shall be surrendered with it, and no bond of any kind shall in any case be received before maturity which has the interest coupons detached, and nothing shall be allowed such immature coupons. All evidences of indebtedness taken by said receiver in payment of taxes shall be cancelled by him, as soon as the same comes into his hands, under the supervision of the Chancellor, and in such manner as he may order and decree.

"SECT. 6. That when collections shall be made, or taxes paid, as herein provided, or in current or in lawful money of the United States, it shall not be lawful for such receiver and back-tax collector to coerce payment of a greater sum than one-fifth part annually, so as to distribute the whole through five equal annual instalments. The said period of five years shall begin from the time of the appointment and qualification of the back-tax collector and receiver, and all costs of condemnations, penalties, and charges are hereby remitted, in all cases where taxes are collected under this act : *Provided, however*, that nothing herein contained is intended to interfere with any vested right which entitles the party having such right to a speedier collection, but only to extend the indulgence where the State has the power to do so without interfering with vested rights.

"SECT. 7. That funds collected under this act shall be paid out by the treasurer of the State, from time to time, to those entitled, in such manner as the Chancery Court may adjudge and decree, on the warrant of the receiver, countersigned by the Chancellor.

"SECT. 8. That the compensation of the back-tax collector and receiver of the extinct corporation of Memphis shall be two thou-

sand dollars per annum, but after two years the county court shall fix the salary of said officer, not to exceed two thousand, dollars per annum, and of such other municipalities as this act may apply to, such sum as the quarterly court of the county may allow, in no case to exceed the sum that would be paid to the county trustee for like service.

" SECT. 9. That the receiver and back-tax collector shall have power to employ an assistant at a compensation not to exceed one hundred dollars per month during the time he is in actual service.

" SECT. 10. That publication shall make all creditors parties, with the right to relief as fully as if especially named, and they may at any time file with the clerk of the court their claims, or attested copies, retaining the original if they desire, subject to be produced, however, as the court may order, and placed in the custody of the clerk. The simple filing of said claims, respectively attested by the affidavit of the owner or his agent or attorney, shall be proof of such claims in common form, and, if not contested, entitle the same to payment *pro rata;* and for administering the oath in proving such claims in common form, and filing the same, the clerk shall receive the sum of ten cents, to be paid at the time of making the oath and filing the claim. If any creditor or the receiver and back-tax collector shall desire to contest the validity in whole or part of any claim filed in common form, he may do so in a summary way in the progress of the cause. The opposing parties in such contest shall reduce the facts to writing that are necessary to its determination, and file the same, and when filed they shall become part of the record, and the court shall have power, upon motion, and in a summary way, to hear and determine all questions of priority of payment in the progress of the cause. When any party is dissatisfied with the decision of any litigated question, he may have such question reheard upon appeal or writ of error in the Supreme Court, but so much, of the record only as pertains to that particular litigation shall form the transcript and record for the appellate court, and the costs shall be paid by the parties to such appeal as the appellate court may direct, unless the receiver and back-tax collector is a party to the litigation on behalf of creditors generally, and in that case the costs may, if the appellate court think proper, be charged to the whole, or to some particular fund, as right and justice may require.

" SECT. 11. That nothing herein shall be construed to prejudice the right of redemption now allowed by law to any person for redeeming land hitherto sold for taxes, or that may hereafter be

sold under the provisions of this act; and as to all lands within the limits of such extinct municipalities heretofore sold for taxes and bid off in the name of the State or the city, the former, or their heirs or vendees, shall have five years from and after the passage of this act within which to redeem the same, but until such redemption such property shall be and remain the property of the State, and the owners, their heirs or vendees, shall alone have the right to redeem.

"SECT. 12. That it is the duty of the Attorney-General of the district wherein is situated the taxing district, as provided for in the act aforesaid, and they are hereby required immediately to suggest of record in all the courts of this State, and of the United States, where suits are pending against said municipalities, the repeal of the charters of the same.

"SECT. 13. That the proceedings in all suits now pending for the collection of taxes due such extinct municipalities shall be suspended until the filing of the general creditors' bill and the consolidation provided for in this act, and said general creditors' bill shall be prepared and filed by the receiver and back-tax collector as soon as practicable, and within six months from his appointment and qualification, and to enable him to prepare said bill he is authorized to employ, under the direction of the Chancellor, any cash funds that may come into his hands in obtaining any necessary abstracts of title.

"SECT. 14. That this act shall take effect from and after its passage, the public welfare requiring it.

"Approved March 14, 1879."

Pursuant to the provisions of said chapter 92, the Governor of Tennessee appointed Minor Meriwether to be receiver and back-tax collector. Thereupon the complainants, April 10, 1879, filed in the consolidated causes an amended and supplemental bill, to which Meriwether, William F. Hardin, Joseph R. Williams, and John B. Hill were, in addition to the persons mentioned in the original and amended bills, made defendants. This bill, after stating the filing of the original and amended bills by the various complainants, alleging the contents thereof, the failure of the defendants to either plead, answer, or demur thereto, the appointment of Latham as receiver, the execution of his bond, and his entry upon the duties of that office, and charging that said Meriwether, as receiver and back-tax

collector, is interfering with said Latham as receiver of the court, and is impeding him in the collection of back taxes, and discouraging and preventing payments to him; that the defendants, Hardin, Williams, and Hill, who are citizens of and residents in the city of Memphis, although indebted to it for taxes long overdue and unpaid, refuse to pay them to said Latham as receiver, — prays that an injunction may issue restraining said Meriwether, his agents and attorneys, and each of them, from demanding, taking possession of, recovering, collecting or attempting to collect, or in any way interfering with the assets and property, real, personal, or mixed, or choses in action, of the city of Memphis, including the debts due to her, taxes of every description heretofore assessed and levied by or for her, and the evidences of such assets, property, debts, and taxes, consisting of deeds, bonds, bills, notes, accounts, books of assessment, tax-books and other books, and writings of every description, having reference to such property, assets, debts, taxes, or any part thereof; and from instituting or prosecuting any suits or actions of any kind whatever in any court against the said Latham, as such receiver as aforesaid, or against any other person or persons, for the recovery of any part of the assets or property, debts, taxes aforesaid, or any tax-books, assessment-books, or other books or writings of any kind having connection therewith or reference thereto or to any part thereof; and from doing any act or thing, and from making or publishing in any manner whatsoever any declaration or notice, printed, written, or verbal, asserting or tending to assert that the right to the property or custody or control of the said assets or debts or taxes of the city of Memphis, or property of any kind thereof, or to collect or receive the same, is rightfully in him, the said Meriwether, or is not in the said Latham, as such receiver, or tending to persuade or advise, prevent, hinder, or deter the persons owing debts or taxes to the city of Memphis from paying the same to the said Latham, as such receiver; that an account may be taken as to the amount of taxes or debts due from each and every of the said defendants, Hardin, Williams, and Hill, and the particular lot or lots of land upon which the said taxes were assessed and levied, and upon which they constitute a lien, and the

amount due and owing by them to the city of Memphis on account of past-due taxes or on any other account; that the complainants may be subrogated to all the rights, claims, and liens of the said city of Memphis against the said defendants severally; and that the lien which the said defendant, the city of Memphis, held or holds against or on the several lots and parcels of land aforesaid, on account of said taxes assessed and levied thereon, may be declared and fixed by decree for the benefit of the complainants and other creditors in like attitude, and that personal decrees be also rendered against each of said defendants for the amount found due from them on the taking of the said accounts for the benefit of complainants; and that unless said defendants shall severally pay into the registry of this court by a day fixed the amounts so found due from them on the claims aforesaid, that then the court decree that said several parcels or lots of land be sold to satisfy the amounts so found due on account of each as liens thereon, and in order that all equity of redemption or repurchase shall be cut off and for ever barred; that the said lots be sold on a credit of seven months, and barring all right of redemption, and the proceeds when realized be applied to the payment of the complainants' claims herein, and other creditors in like attitude who may come in and be made parties hereto.

The defendants demurred, setting up sundry grounds therefor. The judges, upon consideration of the matters thereon arising, were divided in opinion upon the following questions: —

1st, Whether, inasmuch as the first of the original bills filed in these consolidated cases was filed in this court prior to the 29th of January, 1879, the date of the act of the General Assembly of the State of Tennessee repealing the charter of the city of Memphis, this court had or has any jurisdiction to seize and impound the assets, revenues, and properties of the corporation in being, described in complainants' bill, and to place those assets, revenues, and properties in the hands of a receiver appointed by the court to collect, administer, and disburse the same in the payment of creditors of such corporation.

2d, Whether the act of the General Assembly of the State of Tennessee, entitled " An Act to repeal the charters of certain municipal corporations, and to remand the territory and the inhabitants thereof to the government of the State," passed Jan. 29, 1879, and approved Jan. 31, 1879, and which act in terms, as shown therein, repealed the charter and all laws incorporating the city of Memphis, was and is a valid law, or whether the said act is contrary to the Constitution of the State of Tennessee or to the Constitution of the United States, as against creditors holding bonds and debts contracted prior to the repeal.

3d, Whether this court has jurisdiction to seize and impound and administer the assets, properties, and revenues of said municipal corporation, when it appears that the mayor and other officers of said municipal corporation - have abandoned their offices and duties, and where it also appears that the General Assembly of the State has passed a series of these acts, one repealing the charter of Memphis ; the second, creating a taxing district in the same territory and providing a government therefor ; and the third, to collect and dispose of the taxes assessed for municipal corporations in this State, &c., being chaps. 10, 11, and 92 of the acts of 1879.

4th, Whether, if the act of the General Assembly repealing the charter of the city of Memphis be valid, the effect thereof was to extinguish all claims, debts, dues, and demands to and from said municipal corporation, including the claims of the various complainants in these causes.

5th, Whether, if said act repealing the charter be declared valid, and that the effect thereof was not to extinguish all claims, debts, dues, demands to and from said municipal corporation, this court has jurisdiction to collect the taxes which had been lawfully assessed by said municipal corporation and due before the repeal of its charter, but which have not been collected.

6th, Whether, if this court has jurisdiction to collect back or delinquent taxes, it can do so by directing its receiver to sue the delinquent tax-payers, and if so, in what court, State or Federal, must such suits be brought, or can the court, by proceeding in the nature of garnishment, require the delinquent

tax-payers to come before the court and pronounce judgment against each for the amount found to be due.

7th, Whether this court has jurisdiction to enforce the lien on real estate for taxes which the said municipal corporation possessed by proceeding in these causes or otherwise.

8th, Whether upon the entire record this court has jurisdiction to entertain the bills and grant any relief to the complainants.

9th, Whether after the taxes already levied and uncollected, due said corporation, and the other property named in these bills, shall have been ascertained to be insufficient to pay all the creditors of said city, that then this court has power to bring in all or any part of the inhabitants and corporators within the limits of said dissolved corporation by process, and make assessment against them or their property to pay the balance of entire debt found owing from said corporation *pro rata*, and render judgments and decrees against each of them for the *pro rata* share or amount found due from said dissolved corporation, and enforce liens against specific property against which taxes shall have been levied.

10th, Whether where the charter of a municipal corporation has been repealed the creditors of such municipal corporation have a right to any relief, except such as the State, through and by its legislative enactments, may afford to such creditors.

13th, Whether the fourth section of the act of the legislature of the State of Tennessee, approved Jan. 31, 1879, chapter 10, acts 1879, repealing the charter of the city of Memphis, and the fourteenth section of an act of the said legislature, approved on the thirty-first day of January, 1879, being chapter 11 of the acts of said State for 1879, and act of the said legislature, approved March 13, 1879, being chapter 92 of the acts of said legislature of 1879, and particularly sections 4, 5, 6, 7, 11, and 13 of said act, as far as complainants are concerned, and the creditors who have made themselves parties, and the receiver of this court who was appointed before said act was passed, are in violation of the Constitution of the United States and of the Constitution of the State of Tennessee, and void.

The presiding judge being of opinion that the demurrers

were not well taken, they were overruled, whereupon, the defendants electing to abide thereby, the court, May 28, 1879, decreed that the complainants, and the other creditors who had made themselves parties under the leave of the court, and such others as might so make themselves parties, do have and recover of and from the city of Memphis the several debts due them respectively, the amounts of which would be fixed by the court, and that all the assets and property of every description theretofore belonging to the city of Memphis, or so much thereof as may be necessary for the purpose, including taxes heretofore assessed and remaining unpaid and due the city, be applied to the payment of such debts; to which end said Latham, as receiver, was directed to retain possession of all the assets and property, books, papers, and writings, placed in his hands to be disposed of only as the court might order in the progress of the suit, and that he collect the said assets and property in the manner directed by the former orders for the payment of the said debts. The court further decreed that the defendant, Minor Meriwether, as receiver and tax-collector, be perpetually enjoined from taking possession of, collecting, or attempting to collect, suing for, or in any way interfering with, said assets, property, books, papers, and writings, so in the possession of or to be collected by said Latham as such receiver; that all the property within the limits of the territory of the city of Memphis is liable and may be subjected to the payment of all the debts aforesaid owing by said city, and that such liability shall be enforced thereafter from time to time in such manner as the court might order and direct; that Latham, the receiver aforesaid, recover of the defendant Williams the sum of $6,843.46, of the defendant Hardin the sum of $954.85, and of the defendant Hill the sum of $6,638.38, being the amount of taxes due by them respectively to the city of Memphis; that executions issue on the said several decrees, the right being reserved to enforce all liens that might exist on any and all property for the payment of the said sums or any part thereof.

Meriwether and the other defendants then appealed here.

*Mr. Joseph B. Heiskell,* *Mr. George Davitt,* and *Mr. Minor Meriwether* for the appellants.

*Mr. William M. Randolph, contra.*

MR. CHIEF JUSTICE WAITE announced the conclusions reached by the court as follows: —

1. Property held for public uses, such as public buildings, streets, squares, parks, promenades, wharves, landing-places, fire-engines, hose and hose-carriages, engine-houses, engineering instruments, and generally everything held for governmental purposes, cannot be subjected to the payment of the debts of the city. Its public character forbids such an appropriation. Upon the repeal of the charter of the city, such property passed under the immediate control of the State, the power once delegated to the city in that behalf having been withdrawn.

. 2. The private property of individuals within the limits of the territory of the city cannot be subjected to the payment of the debts of the city, except through taxation. The doctrine of some of the States, that such property can be reached directly on execution against the municipality, has not been generally accepted.

3. The power of taxation is legislative, and cannot be exercised otherwise than under the authority of the legislature.

4. Taxes levied according to law before the repeal of the charter, other than such as were levied in obedience to the special requirement of contracts entered into under the authority of law, and such as were levied under judicial direction for the payment of judgments recovered against the city, cannot be collected through the instrumentality of a court of chancery at the instance of the creditors of the city. Such taxes can only be collected under authority from the legislature. If no such authority exists, the remedy is by appeal to the legislature, which alone can grant relief. Whether taxes levied in obedience to contract obligations, or under judicial direction, can be collected through a receiver appointed by a court of chancery, if there be no public officer charged with authority from the legislature to perform that duty, is not decided, as the case does not require it.

5. The receiver and back-tax collector appointed under the authority of the act of March 13, 1879, is a public officer, clothed with authority from the legislature for the collection of the taxes levied before the repeal of the charter. The funds

collected by him from taxes levied under judicial direction cannot be appropriated to any other uses than those for which they were raised. He, as well as any other agent of the State charged with the duty of their collection, can be compelled by appropriate judicial orders to proceed with the collection of such taxes by sale of property or by suit or in any other way authorized by law, and to apply the proceeds upon the judgments.

6. The bills in this case cannot be amended so as to obtain relief against the receiver and back-tax collector, without making an entirely new suit. They were not framed with a view to any such purpose.

7. The decree of the court below is reversed.

8. The cause is remanded, with instructions to dismiss the bills, without prejudice. If, on the settlement of the accounts of the receiver herein, it shall be found he has any money in his hands collected on taxes levied under judicial direction to pay judgments in favor of any persons who have become parties to this suit, an order may be made directing its appropriation to the payment of such judgment.

Upon the first, second, third, and fifth of these propositions the judgment of the court is unanimous. Upon the fourth, sixth, seventh, and eighth it is by a majority only.

MR. JUSTICE FIELD delivered the following opinion for himself, MR. JUSTICE MILLER, and MR. JUSTICE BRADLEY.

Mr. Justice Miller, Mr. Justice Bradley, and myself concur in the judgment rendered, but, as the judgment is not accompanied by a statement of the reasons on which it is founded, I proceed to state those which have controlled us.

In January, 1879, the city of Memphis, in the State of Tennessee, was financially in a bad condition. She had been for many years a municipal corporation, and was invested with the ordinary powers of such bodies to make contracts and incur obligations for municipal purposes, and to levy and collect taxes to meet her expenditures. Her authorities were also at different times specially empowered by the legislature of the State to subscribe for stock in railroad corporations, to aid in the construction of lines of railway leading to and from

the city, and to issue interest-bearing bonds for the amount
subscribed; also to issue bonds of like character to raise the
means to erect water-works, construct pavements, and make
" any public improvements " that might be necessary, and to
acquire property for the public use of the city. Indeed, the
powers conferred at various times upon the authorities to
undertake public works, and engage in enterprises for the
benefit of the city, were as large as the supposed necessities
of a municipality with great expectations of future growth
could suggest; and these powers appear to have been exercised
with a liberality proportionate to the expectations.  Taxes
were levied to meet the consequent expenditures of the city
and the interest on her bonds, but these were not always
enforced with the readiness with which the obligations were
incurred.

The record shows that for several years preceding 1879 not
more than three-fifths of the annual taxes were collected.
Whether this arose from the viciousness of the system of tax-
ation adopted, or the inefficiency of the officers of collection, is
immaterial.  Probably it arose partly from both causes.  The
natural result followed: the revenues received became insuffi-
cient to meet the just claims of creditors; obligations were not
paid as they matured; coupons for interest on bonds were not
provided for; the city was in default for much of the princi-
pal and all of the interest of her indebtedness: she was insol-
vent.  Suits were soon commenced against her by creditors:
some in the Federal courts, some in the State courts; and
from the Federal courts in several cases a *mandamus* was
issued to the authorities of the city to levy a special tax for
the payment of judgments recovered.  With taxes uncollected,
debts maturing, and both principal and interest unprovided
for; with numerous suits commenced and more threatened;
with credit gone and the property of her citizens already sub-
jected to burdens difficult to be borne, — the city was in a
condition out of which she was almost helpless to extricate
herself.

While the city was thus burdened with debts and pursued
by creditors, the State interfered; and on the 29th of January,
1879, repealed the charter of the city, took the immediate con-

trol and custody of her public property, and afterwards assumed the collection of the taxes levied, and their application to the payment of her indebtedness.

The repealing act was in terms general, and applied to all municipal corporations in the State having thirty-five thousand inhabitants at the date of its passage, to be ascertained by the governor, and declared by his proclamation. The city of Memphis had that number of inhabitants; and it was so proclaimed by the governor. The act not only repealed the charters of all such corporations, with their amendments, but declared that all municipal offices, held under them, were abolished; that the population within their territorial limits were resolved back into the body of the State; that all power of taxation in any form previously invested in their authorities was withdrawn and reserved to the legislature; and that the public buildings, squares, promenades, wharves, streets, alleys, parks, fire-engines, hose and carriages, engine-houses, engineer instruments, and all other property, real and personal, previously used for municipal purposes, were transferred to the custody and control of the State, to remain public property as previously it always had been.

On the same day with the passage of the repealing act, the legislature passed another act to establish taxing districts in the State, and to provide the means for their local government. It declared that the several communities embraced in the territorial limits of the repealed corporations, and of such other corporations as might surrender their charters under the act, were created taxing districts in order to provide the means of local government for their peace, safety, and general welfare; that the necessary taxes for the support of the governments thus established should be imposed directly by the General Assembly, and not otherwise; that in administering the affairs and providing the means of local government the following agencies and instrumentalities were established, — namely, a board of fire and police commissioners; a committee on ordinances or local laws, to be known as the legislative council of the taxing district; a board of health, and a board of public works; and it prescribed in detail the duties and powers of these local agencies. The act prohibited the

commissioners from issuing any bonds, notes, scrip, or other evidences of indebtedness, or from contracting for work, material, or services in excess of the amount levied for them for that year; and declared that no property, real or personal, held by them for public use should ever be subject to execution, attachment, or seizure under any legal process for any debt created by them; that all taxes due, or moneys in the hands of the county trustee, or on deposit, should be exempt from seizure under attachment, execution, garnishment, or other legal process. It also declared that no writ of *mandamus* or other process should lie to compel them or other governing agencies to levy any taxes, and that neither the commissioners, nor trustee, nor the local government should be held to pay or be liable for any debt created by the extinct corporations, and that none of the taxes collected under the act should ever be used for the payment of any of said debts. The act also declared that all the property previously used by the corporations for purposes of government was transferred to the custody and control of the board of commissioners of the taxing districts, to remain public property for the uses to which it had previously been applied, and that all indebtedness for taxes or otherwise, whether in litigation or not, due to the extinct municipalities, should vest in and become the property of the State, to be disposed of for the settlement of their debts as should thereafter be provided by law.

On the 13th of March following such provision was made. By an act passed by the legislature on that day, the governor was directed to appoint an officer for municipal corporations, whose charters had been repealed under the first act mentioned, or might be subsequently surrendered, to be known as a receiver and back-tax collector. It required him to take possession of all books, papers, and documents pertaining to the assessment and collection of taxes, which had been levied at the time of the repeal of the charters. It ordered him to file a bill in the Chancery Court of the county in which the corporation was situated, in the name of the State, in behalf of all creditors against all its delinquent tax-payers, and provided that taxes assessed prior to 1875 might be settled in the valid indebtedness of the extinct municipality, whether due or

not, and that the receiver should receive evidences of such indebtedness at certain designated rates. It also prohibited him from coercing payment of a greater sum than one-fifth of the taxes in arrears annually, so as to distribute the whole through five equal annual instalments, commencing from his appointment and qualification. It authorized the Chancery Court to enforce all liens upon property for the payment of taxes, and to order all sales necessary for their collection; and to settle and adjust all equities, priorities, and liens; and to give to the defendants and creditors all the relief which might be given if there were as many separate suits as there were creditors and delinquent tax-payers. It provided that the taxes as collected should be paid into the State treasury, and be paid out to parties entitled to receive them, as adjudged by the Chancery Court, upon the warrant of the receiver, countersigned by the Chancellor. It required the receiver, in paying the money collected into the treasury, to distinguish the sources whence it was derived, showing the amount from each special and general tax, so that they might be kept separate, and be paid out to creditors according to the priority, lien, or equity determined. The act was accompanied with a proviso that it should not interfere with any vested rights entitling parties to a speedy collection. On the passage of the repealing act there was a large amount of uncollected taxes, which had been levied upon property in the city of Memphis, such as taxes to pay certain specified creditors under writs of *mandamus*, a special tax to pay interest upon bonds, a special sinking-fund tax, a school tax, a wharfage tax, a tax upon merchants to pay police and firemen, a tax to pay interest upon bonds issued to certain railroads, and a tax for general purposes of government. Under the provisions of the act of March 13, the defendant, Minor Meriwether, was appointed by the governor receiver and back-tax collector of that city. He accepted the appointment, and proceeded at once to the performance of his duties.

The day previous to the passage of the act repealing the charter of Memphis, and probably in anticipation of the contemplated legislation of the State, Robert Garrett and others, creditors of the corporation, filed a bill against the city, al-

leging in substance that the city owed them over $100,000,
upon much of which they had recovered judgments and
obtained writs of *mandamus* to compel the levy of taxes for
their payment; that various writs of *mandamus* had been
issued against the city for over $850,000; that through the
malfeasance and incompetency of its officials only about three-
fifths of the taxes imposed had been collected, and that this
practice had run through a series of years, resulting in delin-
quent taxes of about $2,500,000; that the taxes levied, pur-
suant to the writs of *mandamus* issued, constituted a trust fund
which could only be used for the payment of the judgments;
that the city was a trustee for the same, and, although re-
quested to press the collection, had neglected to do so, and
that this neglect was a fraud on the complainants relievable
in a court of equity.

It also set up that the legislature, by an act of the 19th of
March, 1877, had authorized the Chancery Court of the State
to appoint a receiver to take charge of the affairs of the city,
upon application of creditors owning demands against her ex-
ceeding $100,000, when it was made to appear that writs of
*mandamus* had been issued against her to enforce debts against
the city amounting to over $850,000; and averring that the
court had jurisdiction, both upon general principles of juris-
prudence and by authority of that act, the bill prayed the
appointment of a receiver to take charge of the assets of the
city, including its tax-books and bills for unpaid taxes, and to
collect the taxes levied, for the purpose of paying the judg-
ments.

After the repealing act was passed, the complainants filed
a supplementary bill setting up the passage of the act, alleging
its invalidity, and repeating its prayer for the appointment of
a receiver.

Subsequently several other parties instituted like suits
against the city. All the suits were, in February, 1879, con-
solidated into one without objection, and by amendment to it,
in April following, Meriwether, the receiver appointed by the
governor, was made a defendant, as also sundry parties upon
whose property taxes had been levied. With the consolidation
a receiver of the assets and property of the city was appointed

to hold and dispose of the same under the direction of the court; and he immediately qualified, and proceeded to take possession, so far as practicable, of the property and assets, and to exercise the powers with which he was invested.

To the bill as consolidated and amended a demurrer was interposed by the defendants, upon which several questions arose, on which the judges of the Circuit Court were divided in opinion. The prevailing opinion of the presiding judge being against the demurrer, it was overruled, and the defendants electing to stand upon it, judgment final was rendered in favor of the complainants, from which the defendants have appealed to this court.

The receiver appointed by the court was invested with larger powers than probably any officer of a court was ever before intrusted with. He was required to demand, receive, and take possession of all the assets and property of the city of Memphis, including real and personal property, and debts due to it and taxes which had been previously levied, except the taxes appearing on the tax-books for the year 1878, for which special provision was made; and except, also, the public highways of the city, the public squares, the public landings and wharves, the hospital, and certain property used in connection with it, and property of the fire, engineer, and police departments, and the taxes levied for the support of the public schools, which excepted articles he was not to take possession of or interfere with until the further order of the court. It does not appear that the court entertained any doubt that it could at some future time place all this public property in the hands of its receiver, as its subsequent decree shows. The receiver was also required to take possession of all the tax-books of the city on which unpaid taxes were charged, except the tax-books for the year 1878; and also all the safes, books, papers, desks, office furniture, and other property belonging to the offices of mayor, comptroller, register, treasurer, tax-collector, inspector, and city attorney, necessary to the discharge of his duties as receiver, and of the buildings in which the general council of the city had previously assembled, and the property in and belonging to such buildings not previously excepted, and keep them subject to the order of the court; and parties

having possession or control of such property, or any part of
it, were required to surrender the same to him on demand.

By the order appointing the receiver, the trustee of Shelby
County, within which the city of Memphis is situated, was
required to pay over to him all the moneys he had on hand
collected for taxes levied by the city for the year 1878, except
such as were levied for the support of public schools. The
former treasurer of the city was also required, with the like
exception, to turn over to the receiver, on demand, all the
money in his hands or on deposit in the German National
Bank, received for the city. The mayor of the city was also
to pay over to him any money, and deliver to him any prop-
erty, belonging to the city, and the papers and vouchers neces-
sary for the discharge of the receiver's duties; and the clerk
of the county of Shelby was also to pay over any moneys re-
ceived by him on account of the redemption of property sold
for taxes due the city. The receiver was also required to lease
the property of which he might have possession from month
to month, and to collect the rents and hold the same subject
to the order of the court; and, if he found it necessary, he
was authorized to bring actions at law or suits in equity
against parties indebted to the city, or for any tax or taxes
appearing on the tax-books, and to enforce any specific liens
on the property, real or personal, for the payment of such
taxes; and to employ as many clerks and assistants as he
might deem necessary; to make use of the buildings and of-
fices in the city hall, and of such safes, desks, tables, chairs,
and other furniture and property of the city he might need;
to buy and pay for necessary books, stationery, fuel, and lights,
and whatever else might be necessary to fit his office or offices
for use to enable him to discharge his duties; to insure any
property, real or personal, which might come into his hands,
when he thought prudent to do so; to employ one or more
attorneys, if necessary, to conduct the prosecution or defence
of suits that he might find necessary to bring or defend under
the authority conferred by him. Other powers were also
vested in the receiver, but what has already been said is
enough to show the extraordinary character of those conferred
and of the duties imposed upon him. He was, in fact, in-

vested with the administration of the financial affairs of the city, so far as might be necessary for the collection of taxes and debts and disposing of the property of the city to pay the claims of creditors. Executive and administrative functions were invested in him which, it has not been supposed, could adequately be performed by the same person in any government of a city properly conducted.

The decree adjudged that the complainants in the several suits, and other creditors who had made themselves parties by leave of the court, or who might thereafter make themselves parties, should recover from the city the several debts due them respectively, the amounts to be thereafter fixed by the court, and that all the assets and property of the city, " of every description," or so much thereof as might be necessary for that purpose, including taxes previously assessed and remaining unpaid and due the city, should be applied to the payment of their debts. The decree also adjudged that the receiver should retain possession of all the assets and property, books, papers, and writings previously placed in his hands to be disposed of as the court might order in the progress of the suit, and that he proceed to collect the assets and property in the manner directed by previous orders for the payment of the debts. It also enjoined the defendant, Minor Meriwether, the receiver and back-tax collector appointed by the governor of the State, from taking possession of, collecting, or attempting to collect, suing for, or in any way interfering with, the assets and property, books, papers, and writings in the possession of the receiver of the court. And the decree further adjudged that all the property within the limits of the territory of the city of Memphis was liable and might be subjected to the payment of all the debts of the city, and that such liability would be enforced thereafter, from time to time, in such manner as the court might direct.

This decree is manifestly erroneous in its main provisions. It proceeds upon the theory that the property of every description held by the municipality at the time of its extinction, whether held in its own right or for public uses, including also in that designation its uncollected taxes, were chargeable with the payment of its debts, and constituted a trust fund, of which

the Circuit Court would take possession and enforce the trust; and that the private property of the inhabitants of the city was also liable, and could be subjected by the Circuit Court to the payment of its debts. In both particulars the theory is radically wrong.

The right of the State to repeal the charter of Memphis cannot be questioned. Municipal corporations are mere instrumentalities of the State for the more convenient administration of local government. Their powers are such as the legislature may confer, and these may be enlarged, abridged, or entirely withdrawn at its pleasure. This is common learning, found in all adjudications on the subject of municipal bodies and repeated by text-writers. There is no contract between the State and the public that the charter of a city shall not be at all times subject to legislative control. All persons who deal with such bodies are conclusively presumed to act upon knowledge of the power of the legislature. There is no such thing as a vested right held by any individual in the grant of legislative power to them. *United States v. Railroad Co.*, 17 Wall. 322; *Commissioners v. Lucas, Treasurer*, 93 U. S. 108; *People v. Morris*, 13 Wend. (N. Y.) 325; *Philadelphia v. Fox*, 64 Pa. St. 169; *Montpelier v. East Montpelier*, 29 Vt. 12; Angell & Ames, Corp. (10th ed.), sect. 31; Dill. Mun. Corp., sect. 30; Cooley, Const. Lim. 192, 193. By the repeal the legislative powers previously possessed by the corporation of Memphis reverted to the State. A portion of them the State immediately vested in the new government of the taxing district, with many restrictions on the creation of indebtedness. A portion of them the State retained; it reserved to the legislature all power of taxation. It thus provided against future claims from the improvidence or recklessness of the new government. The power of the State to make this change of local government is incontrovertible. Its subsequent provision for the collection of the taxes of the corporation levied before the repeal of its charter, and the appropriation of the proceeds to the payment of its debts, remove from the measure any imputation that it was designed to enable the city to escape from its just liabilities.

But while the charter of a municipal corporation may be

repealed at the pleasure of the legislature, where there is no inhibition to its action in the Constitution of the State, the lawful contracts of the corporation, made whilst it was in existence, may be subsequently enforced against property held by it, in its own right, as hereafter described, at the time of the repeal. In this respect its position is not materially different from that of a private individual, whose property must, upon his decease, go to the satisfaction of his debts before those who succeed to his rights can share in its distribution. The language used by us in the case of *Broughton* v. *Pensacola* on this subject is quoted by counsel, under the impression that it tends to sustain the position of the complainants. We there said : —

"The ancient doctrine that, upon the repeal of a private corporation, its debts were extinguished, and its real property reverted to its grantors, and its personal property vested in the State, has been so far modified by modern adjudications that a court of equity will now lay hold of the property of a dissolved corporation, and administer it for the benefit of its creditors and stockholders. The obligation of contracts, made whilst the corporation was in existence, survives its dissolution, and the contracts may be enforced by a court of equity, so far as to subject, for their satisfaction, any property possessed by the corporation at the time. In the view of equity, its property constitutes a trust fund, pledged to the payment of the debts of creditors and stockholders ; and if a municipal corporation, upon the surrender or extinction in other ways of its charter, is possessed of any property, a court of equity will equally take possession of it for the benefit of the creditors of the corporation." 93 U. S. 266, 268.

We approve of the doctrine stated in this citation. It expresses what we believe to be sound law. It means that whatever property a municipal corporation holds subject to the payment of its debts, will, after its dissolution, be so administered and applied by a court of equity. It does not undertake to determine what is to be deemed the property of a municipal corporation, which, after the extinction of its charter, is thus applicable. In the case from which it is taken, the bill alleged that the city of Pensacola, upon the surrender of its

charter, did not possess any property, and, of course, the question here raised could not have been before the court. The question there was as to the continuation of the city's liability under a new organization.

What, then, is the property of a municipal corporation, which, upon its dissolution, a court of equity will lay hold of and apply to the payment of its debts? We answer, first, that it is not property held by the corporation in trust for a private charity, for in such property the corporation possesses no interest for its own uses; and, secondly, that it is not property held in trust for the public, for of such property the corporation is the mere agent of the State. In its streets, wharves, cemeteries, hospitals, court-houses, and other public buildings, the corporation has no proprietary rights distinct from the trust for the public. It holds them for public use, and to no other use can they be appropriated without special legislative sanction. It would be a perversion of that trust to apply them to other uses. The courts can have nothing to do with them, unless appealed to on behalf of the public to prevent their diversion from the public use. The dissolution of the charter does not divest the trust so as to subject property of this kind to a liability from which it was previously exempt. Upon the dissolution, the property passes under the immediate control of the State, the agency of the corporation then ceasing. 2 Dillon, Mun. Corp., sects. 445, 446; *Schaffer* v. *Cadwallader*, 36 Pa. St. 126; *City of Davenport* v. *Peoria Marine & Fire Insurance Co.*, 17 Iowa, 276; *Askins* v. *Commonwealth*, 1 Duv. (Ky.) 275; *The President, &c.* v. *City of Indianapolis*, 12 Ind. 620.

In the third place, we say that taxes previously levied, but not collected on the dissolution of the corporation, do not constitute its property; and in the absence of statutory authority they cannot be subsequently collected by a court of equity through officers of its own appointment, and applied to the payment of the creditors of the corporation. Taxes are not debts. It was so held by this court in the case of *Oregon* v. *Lane County*, reported in 7th Wallace. Debts are obligations for the payment of money founded upon contract, express or implied. Taxes are imposts levied for the support of the gov-

ernment, or for some special purpose authorized by it. The consent of the tax-payer is not necessary to their enforcement. They operate *in invitum.* Nor is their nature affected by the fact that in some States — and we believe in 'Tennessee — an action of debt may be instituted for their recovery. The form of procedure cannot change their character. *City of Augusta* v. *North,* 57 Me. 392 ; *City of Camden* v. *Allen,* 2 Dutch. (N. J.) 398 ; *Perry* v. *Washburn,* 20 Cal. 318. Nor are they different when levied under writs of *mandamus* for the payment of judgments, and when levied for the same purpose by statute. The levy in the one case is as much by legislative authority as in the other. The writs of *mandamus* only require the officers of assessment and collection to obey existing law. In neither case are the taxes liens upon property unless made so by statute. *Philadelphia* v. *Greble,* 38 Pa. St. 339 ; *Howell* v. *Philadelphia,* id. 471 ; 2 Dillon, Mun. Corp., sect. 659. Levied only by authority of the legislature, they can be altered, postponed, or released at its pleasure. A repeal of the law, under which a tax is levied, at any time before the tax is collected, generally puts an end to the tax, unless provision for its continuance is made in the repealing act, though the tax may be revived and enforced by subsequent legislation. We say generally, for there are some exceptions, where the tax provided is so connected with a contract, as the inducement for its execution, that the courts will hold the repeal of the law to be invalid as impairing the obligation of the contract. It is not of such taxes, constituting the consideration of contracts, that we are speaking, but of ordinary taxes authorized for the support of government, or to meet some special expenditure; and these, until collected, — being mere imposts of the government, 'created and continuing only by the will of the legislature, — have none of the elements of property which can be seized like debts by attachment or other judicial process and subjected to the payment of creditors of the dissolved corporation. They are in no proper sense of the term assets of the corporation. They are only the means provided for obtaining funds to support its government and pay its debts, and disappear as such means with the revocation of the charter, except as the legislature may otherwise provide. When they are collected, the moneys

in the hands of the collecting officer may be controlled by the process of the courts, and applied by their direction to the uses for which the taxes were levied ; but until then there is nothing in existence but a law of the State imposing certain charges upon persons or property, which the legislature may change, postpone, or release, at any time before they are enforced. So long as the law authorizing the tax continues in force, the courts may, by *mandamus*, compel the officers empowered to levy it or charged with its collection, if unmindful and neglectful in the matter, to proceed and perform their duty; but when the law is gone, and the office of the collector abolished, there is nothing upon which the courts can act. The courts cannot continue in force the taxes levied, nor levy new taxes for the payment of the debts of the corporation. The levying of taxes is not a judicial act. It has no elements of one. It is a high act of sovereignty, to be performed only by the legislature upon considerations of policy, necessity, and the public welfare. In the distribution of the powers of government in this country into three departments, the power of taxation falls to the legislative. It belongs to that department to determine what measures shall be taken for the public welfare, and to provide the revenues for the support and due administration of the government throughout the State and in all its subdivisions. Having the sole power to authorize the tax, it must equally possess the sole power to prescribe the means by which the tax shall be collected, and to designate the officers through whom its will shall be enforced.

It is the province of the courts to decide causes between parties, and, in so doing, to construe the Constitution and the statutes of the United States, and of the several States, and to declare the law, and, when their judgments are rendered, to enforce them by such remedies as legislation has prescribed, or as are allowed by the established practice. When they go beyond this, they go outside of their legitimate domain, and encroach upon the other departments of the government; and all will admit that a strict confinement of each department within its own proper sphere was designed by the founders of our government, and is essential to its successful administration.

This doctrine is not new in this court. It has been repeatedly asserted, after the most mature consideration. It was asserted in *Rees* v. *City of Watertown*. There the plaintiff, being the owner of certain bonds issued by the city of Watertown, in Wisconsin, to a railroad company, brought suit upon them in the Circuit Court of the United States, and recovered two judgments amounting to about $10,000. Upon these judgments he issued executions, which were returned unsatisfied. He then applied to the Circuit Court, and obtained a writ of *mandamus* upon the authorities of Watertown to levy and collect a tax upon the taxable property of the city to pay the judgments; but before the writs could be served a majority of the members of the council resigned their offices. Subsequent writs of *mandamus* obtained by him proved ineffectual, by reason of similar resignations. He then filed a bill alleging that the corporate authorities were trustees for the benefit of the creditors of the city; that the property of the citizens was a trust fund for the payment of its debts, and that it was the duty of the court to lay hold of such property and cause it to be applied; and he prayed that the court would subject the taxable property of the city to the payment of the judgments. To this bill the city made answer; and on the argument of the case, among other points, the question arose whether it was competent for the court, on the failure of the officers of the city to levy the tax as required by law, to appoint the marshal of the court to levy and collect the tax to pay the judgments. Upon this question, the judges being divided, the point was certified to this court. In disposing of it we said: " We are of the opinion that this court has not the power to direct a tax to be levied for the payment of these judgments. This power to impose burdens and raise money is the highest attribute of sovereignty, and is exercised, first, to raise money for public purposes only; and, second, by the power of legislative authority only. It is a power that has not been extended to the judiciary. Especially is it beyond the power of the Federal judiciary to assume the place of a State in the exercise of this authority at once so delicate and so important." 19 Wall. 107, 116.

In the case of *Heine* v. *The Levee Commissioners of New Orleans*, the question again arose whether it was competent

for the Circuit Court of the United States to direct its officers to levy and collect a tax to pay the claims of the plaintiffs, who were holders of bonds issued by the commissioners; and the answer was equally emphatic both in the Circuit Court and in this court.

In the Circuit Court, over which Mr. Justice Bradley then presided, the possession of the power of taxation had been denied. "The judicial department," said the Justice, "has no power over the subject. If the officers who are charged with the duty of laying or collecting taxes refuse to perform their functions, the court, in a clear case of failure, and at the instance of a party directly interested, can, by the prerogative writ of *mandamus*, compel them to perform acts which are ministerial, as distinguished from those which are judicial or discretionary. This is all that the judicial department can do on the subject, unless the legislature has expressly conferred upon it further powers." 1 Woods, 247.

And when the case came before this court, we here said, Mr. Justice Miller delivering the opinion : " The power we are here asked to exercise is the very delicate one of taxation. This power belongs, in this country, to the legislative sovereignty, State or National. In the case before us the national sovereignty has nothing to do with it. The power must be derived from the legislature of the State. So far as the present case is concerned, the State has delegated the power to the levee commissioners. If that body has ceased to exist, the remedy is in the legislature, either to assess the tax by special statute, or to vest the power in some other tribunal. It certainly is not vested, as in the exercise of an original jurisdiction, in any Federal court. It is unreasonable to suppose that the legislature would ever select a Federal court for that purpose. It is not only not one of the inherent powers of the court to levy and collect taxes, but it is an invasion by the judiciary of the Federal government of the legislative functions of the State government. It is a most extraordinary request, and a compliance with it would involve consequences no less out of the way of judicial procedure, the end of which no wisdom can foresee." 19 Wall. 655.

These authorities — and many others to the same purport

might be cited — are sufficient to support what we have said, that the power to levy taxes is one which belongs exclusively to the legislative department, and from that it necessarily follows that the regulation and control of all the agencies by which taxes are collected must belong to it.

When creditors are unable to obtain payment of their judgments against municipal bodies by execution, they can proceed · by *mandamus* against the municipal authorities to compel them · to levy the necessary tax for that purpose, if such authorities are clothed by the legislature with the taxing power, and such · tax, when collected, cannot be diverted to other uses; but if those authorities possess no such power, or their offices have been· abolished and the power withdrawn, the remedy of the creditors is by an appeal to the legislature, which alone can give them relief. No Federal court, either on its law or equity side, has any inherent jurisdiction to lay a tax for any purpose, or to enforce a tax already levied, except through the agencies provided by law. However urgent the appeal of creditors and the apparent hopelessness of their position without the aid of the Federal court, it cannot seize the· power which belongs · to the legislative department of the State and wield it in their behalf.

To return to the question propounded: what is the property of a municipal corporation which, on its dissolution, the courts can reach and apply to the payment of its debts?

We answer, it is the private property of the corporation, that is, such as it held in its own right for profit or as a source of revenue, not charged with any public trust or use, and funds in its possession unappropriated to any specific purpose. In this respect the position of the extinct corporation is not dissimilar to that of a deceased individual; it is only such property as is possessed, freed from any trust, general or special, which can go in liquidation of debts.

The decree of the ·Circuit Court proceeding upon a different theory of its control over the uncollected taxes of the repealed corporation, and of the property which could be applied to the payment of its debts, cannot be maintained.

. On another ground, also, the decree is equally untenable. It adjudges that " all the property within the limits of the

territory of the city of Memphis is liable, and may be subjected to the payment of all the debts " for which the suits are brought, and that " such liability shall be enforced thereafter, from time to time, in such manner " as the court may direct.

In no State of the Union, outside of New England, does the doctrine obtain that the private property of individuals within the limits of a municipal corporation can be reached by its creditors, and subjected to the payment of their demands. In Massachusetts and Connecticut, and perhaps in other States in New England, the individual liability of the inhabitants of towns, parishes, and cities, for the debts of the latter, is maintained, and executions upon judgments issued against them can be enforced against the private property of the inhabitants. But this doctrine is admitted by the courts of those States to be peculiar to their jurisprudence, and an exception to the rule elsewhere prevailing. Elsewhere the private property of the inhabitants of a municipal body cannot be subjected to the payment of its debts, except by way of taxation; but taxes, as we have already said, can only be levied by legislative authority. The power of taxation is not one of the functions of the judiciary; and whatever authority the States may, under their constitutions, confer upon special tribunals of their own, the Federal courts cannot by reason of it take any additional powers which are not judicial.

In *Rees* v. *City of Watertown*, from which we have already quoted, the power asserted by the decree was claimed by counsel, but was rejected by the court. " Assume," said the court, " that the plaintiff is entitled to the payment of his judgment, and that the defendant neglects its duty in refusing to raise the amount by taxation, it does not follow that this court may order the amount to be made from the private estate of one of its citizens. This summary proceeding would involve a violation of the rights of the latter. He has never been heard in court. He has had no opportunity to establish a defence to the debt itself, or, if the judgment is valid, to show that his property is not liable to its payment. It is well settled that legislative exemptions from taxation are valid, that such exemptions may be perpetual in their duration, and that they are, in some cases, beyond legislative interference. The pro-

ceeding supposed would violate the fundamental principle contained in chapter twenty-ninth of Magna Charta, and embodied in the Constitution of the United States, that no man shall be deprived of his property without due process of law; that is, he must be served with notice of the proceeding, and have a day in court to make his defence." 19 Wall. 122.

It is pressed upon us with great earnestness by counsel, that unless the Federal courts come to the aid of the creditors of Memphis, and enforce, through their own officers, the taxes levied before the repeal of its charter, they will be remediless. But the conclusion does not follow. The taxes levied pursuant to writs of *mandamus* issued by the Circuit Court are still to be collected, the agency only for their collection being changed. The receiver appointed by the governor has taken the place of the collecting officers of the city. The funds received by him upon the special taxes thus levied cannot be appropriated to any other uses. The receiver, and any other agent of the State for the collection, can be compelled by the court, equally as the former collecting officers of the city, to proceed with the collection of such taxes by the sale of property or by suit, or in any other way authorized by law, and to apply the proceeds upon the judgments. If relief is not thus afforded to the creditors, they must appeal to the legislature. We cannot presume that the appeal will be in vain. We cannot say that on a proper representation they will not receive favorable action.

It is certainly of the highest importance to the people of every State that it should make provision, not merely for the payment of its own indebtedness, but for the payment of the indebtedness of its different municipalities. Hesitation to do this is weakness; refusal to do it is dishonor. Infidelity to engagements causes loss of character to the individual; it entails reproach upon the State.

The Federal judiciary has never failed, so far as it was in its power, to compel the performance of all lawful contracts, whether of the individual, or of the municipality, or of the State. It has unhesitatingly brushed aside all legislation of the State impairing their obligation. When a tax has been authorized by law to meet them, it has compelled the officers of assess-

ment to proceed and levy the tax, and the officers of collection
to proceed and collect it, and apply the proceeds.  In some
instances, where the tax was the inducement and considera-
tion of the contract, all attempts at its repeal have been held
invalid.   But this has been the limit of its power.   It cannot
make laws when the State refuses to pass them.   It is itself
but the servant of the law.   If the State will not levy a tax,
or provide for one, the Federal judiciary cannot assume the
legislative power of the State and proceed to levy the tax.   If
the State has provided incompetent officers of collection, the
Federal judiciary cannot remove them and put others more
competent in their place.   If the State appoints no officers of
collection, the Federal judiciary cannot assume to itself that
duty.   It cannot take upon itself to supply the defects and
omissions of State legislation.   It would ill perform the duties
assigned to it by assuming power properly belonging to the
legislative department of the State.

MR. JUSTICE STRONG, with whom concurred MR. JUSTICE
SWAYNE and MR. JUSTICE HARLAN, dissenting.

The several bills of the complainants were consolidated in
the Circuit Court, and, so far as it appears, without objection.
They are, therefore, to be considered as one case.   The impor-
tant facts averred in the bills and confessed by the demurrer
are the following : —

The complainants are creditors of the city of Memphis.
For a part of their claims they had recovered judgments
against the city before the bills were filed, and had obtained
writs of *mandamus* to enforce the levy of taxes to satisfy the
judgments.   In obedience to these writs the proper city au-
thorities had levied the taxes required, but had neglected to
collect them, in large measure, and, even when a portion of the
taxes had been collected, had failed to appropriate the money
collected to the payment of the judgments for which it had
been specially levied, and to which alone it could be law-
fully applied.   Some of the money thus collected remained
on deposit.   These levies were made during the years 1875,
1876, 1877, and 1878, the city ordinances by which they were
ordered specifying the amounts and the parties for whom the

taxes were levied. The complainants were also large general creditors of the city, holding its obligations, upon which no judgments had been recovered.

Besides the special levies, made as above stated, the city authorities had made others for the purpose of paying interest on the city debt and for general uses. These taxes also remained uncollected. Meanwhile the city had nothing liable to execution at law, and no property except what it held for public uses (in distinction from private), such as public municipal buildings, parks, streets, fire apparatus, &c. It was insolvent.

Such was the situation when these bills were filed. Their object was to obtain the appointment of a receiver to take possession of the assets of the city (including the collected but not appropriated taxes, as well as the claims and bills for past-due and uncollected taxes), and to collect the same with a view to their being applied according to equity and legal right.

The principal one of the consolidated bills was filed on the twenty-eighth day of January, 1879, by Garrett *et al.* Almost immediately after it was filed,—the next day, indeed,—an act of the legislature of the State was passed, approved Jan. 31, 1879, by which the charter of the city was repealed, all power of taxation in any form was withdrawn from its authorities, and all persons holding office under the repealed acts, which constituted the charter and endowed it with power, were prohibited from attempting to exercise any of the functions of their offices. The public buildings, squares, promenades, wharves, streets, alleys, parks, fire-engines, hose and carriages, engineer instruments, and all other property, real and personal, theretofore used for municipal purposes, were declared to be transferred to the control and custody of the State, to remain public property, as it always had been, for the uses to which it had theretofore been applied. The act contained no reservation of the rights of creditors, and said nothing of any outstanding taxes which had been levied but not collected, and it was declared to take effect from and after its passage.

On the same day, Jan. 29, 1879, another act of the legislature was passed, approved Jan. 31, 1879, by which the identical territory that had been embraced in the territorial

limits of the city of Memphis was erected into what the act
calls a " taxing district."    The act declared that the necessary
taxes for the support of the government thus established should
be imposed directly by the General Assembly of the State and
not otherwise.    It established a board of fire and police com-
missioners, a committee on ordinances, or local laws, to be
known as the legislative council, consisting of the commission-
ers of the fire and police boards and the supervisors of the
board of public works.    It established also a board of health,
and a board of public works.    It prohibited the commission-
ers from issuing any evidences of indebtedness, and declared
that no property, real or personal, held by them for public
use, should ever be subject to execution, or attachment, or
seizure under any legal process for any debt created by said
commissioners, and that all taxes due, or moneys in the hands
of the county trustee, or on deposit, should be exempt from
seizure under attachment, execution, garnishment, or other
legal process.    The act also declared that neither the com-
missioners, nor the trustee, nor the new government created
by the act, should pay or be liable for any debt created by
the extinct corporation (*i. e.* the city of Memphis), and that
none of the taxes collected under the act should ever be used
for the payment of any of the said debts.    The act was de-
clared to take effect from its passage.    Its fourteenth section,
as subsequently amended, declared that all the property of
the city mentioned as transferred to the State by the act first
mentioned should be thereby transferred to the custody and
control of the board of commissioners of the taxing district,
and that all indebtedness for taxes, or otherwise, whether in
litigation or not, due the municipality, namely, the city, should
vest in and become the property of the State, to be disposed
of as should thereafter be provided by law.

These two acts were passed, as has been noticed, on the 29th
of January, 1879, and approved two days thereafter.

On the 7th of February, 1879, the complainants, Garrett
*et al.*, filed, by leave of the court, an amended and supplemen-
tal bill, averring what had been charged in the original, and
setting forth, *inter alia*, these acts of the legislature, denying
their constitutionality, and praying, as in the original bill, for

the appointment of a receiver, and praying also that the bill might be taken as a general creditors' bill for all creditors who might come in within a limited time and prove their claims.

The other bills were filed severally on Jan. 30, 1879, Feb. 3, 8, and 10, next following, and on the 12th of February the cases were consolidated, and T. J. Latham was appointed a receiver in accordance with the prayer of the complainants. He gave the required bond on the same day, and took immediate possession of the tax-books, bills, &c., of the city.

Subsequently, on the 13th of March, 1879, the legislature of the State passed another act, the first section whereof directed the governor to appoint an officer for municipal corporations whose charters had been repealed (the city of Memphis being the only one), to be known as a receiver and back-tax-collector. Subsequent sections required such receiver and collector to take possession of all books, papers, and documents pertaining to the assessment and collection of the taxes embraced by the act; namely, the taxes due at the time of the repeal of the charter. It further directed that the receiver should file in the Chancery Court of the State an original creditors' bill, in the name of the State, on behalf of all the creditors, against all the delinquent tax-payers; and it provided that taxes assessed prior to 1875 might be settled in the valid indebtedness of the extinct municipality, to wit, in valid bonds, whether due or not, due coupons, and any other valid debts of such municipality, with accrued interest, whether in the shape of scrip, warrants, judgments, ledger balances, paving certificates, or receipts for money paid by tax-payers to paving contractors. It directed the receiver and back-tax collector to receive such evidences of debt at the following rates, namely: compromise bonds, at their face value; all other indebtedness at fifty cents on the dollar, except judgments, which should be received at fifty-five per cent of their face value.

The act also directed that the receiver should receive in payment of taxes levied after 1874 the indebtedness of the municipality, when there was no lien or equity requiring payment thereof in current money. It also prohibited the collector or receiver from coercing payment of a greater sum than

one-fifth of the taxes in arrear annually, so as to distribute the whole through five equal annual instalments, commencing from his appointment and qualification, — and it remitted all costs of condemnation, penalties, and charges, — provided, however, that nothing therein contained was intended to interfere with any vested rights entitling the party having such right to a speedy collection.

Under the provisions of this act, Minor Meriwether, the principal appellant, was appointed receiver and back-tax collector by the governor of the State. He accepted the appointment, and proceeded to demand the payment to him of the taxes in arrears, interfering with the receiver previously appointed by the Circuit Court, and impeding that receiver in the discharge of his duties. The complainants then filed a supplemental bill, making Meriwether a party defendant, together with some defaulting tax-payers, and praying, among other things, for an injunction against such interference.

To the consolidated bill thus amended and supplemented a general demurrer was filed, which was not sustained by the Circuit Court, and, the defendants electing to stand upon it, a final decree was entered in favor of the complainants. From that decree this appeal has been taken.

Whatever may be said of the equities of the complainants and of their power to enforce those rights in a court of equity, I agree that the decree as entered was too broad. It declared and adjudged that all the assets and property of every description theretofore belonging to the city of Memphis, or so much thereof as may be necessary for the purpose, including taxes theretofore assessed and remaining unpaid and due the city, should be applied to the payment of the debts due to the complainants and other creditors who had made, or might thereafter make, themselves parties to the suit. This included not only the private property of the city, but also that which it had held for public uses; namely, for governmental purposes and as a trustee for the State, such as the public buildings, streets, squares, parks, school-houses, promenades, fire-engines, hose and hose-carriages, engine-houses, engineer instruments, and generally everything held by the city for merely municipal purposes. To this extent, I think, the decree cannot be sus-

tained. Such property cannot be subjected to the payment of the debts of the corporation. Its public character forbids such an appropriation. It could not be subjected to taxation at the instance of the municipality. It was never held for the payment of debts. Instead thereof, it was held by the city merely as a trustee for the public. It would not be contended that it could have been taken in execution at law, and for the same reason it cannot be reached in equity to satisfy creditors.

I think, also, that part of the decree which adjudges that all the property within the limits of the territory of the city of Memphis is liable and may be subjected to the payment of all the debts owing by the city, and that such liability shall be enforced hereafter, from time to time, in such manner as the Circuit Court might order and direct, is erroneous. Notwithstanding what has been held in some of the New England States, I think the doctrine is generally accepted, that the private property of individuals within the territorial limits of a municipal corporation cannot be reached by its creditors directly, any more than the private property of stockholders in other corporations can be thus reached. It may, it is true, be subjected to taxation for the payment of the corporate debts, but the levy of taxes must be made by the corporation itself, or by the State. It is not a judicial act, and courts of equity, at least the circuit courts of the United States, cannot by their own officers levy a tax. *Rees* v. *City of Watertown*, 19 Wall. 107.

They certainly have no power to compel the levy of a tax by a corporation which is without officers and which has ceased to exist.

But while, in these particulars and for these reasons, the decree entered by the Circuit Court cannot be sustained in its full extent, I am of opinion that the complainants are entitled to some of the relief granted them by the decree. If they are not, then a new way has been discovered to pay old debts. It cannot be that a corporation, whether municipal or not, can be dissolved, and that by its dissolution its property can be withdrawn from the reach of its just creditors by any process of law or equity. No doubt there are technical difficulties in the way of maintaining proceedings at law against a corpora-

tion after its charter has been repealed, but a court of equity is competent to enforce justice to some extent, even where the processes of law fail.

A case, I think, was made by the bill for the appointment of a receiver to take into the possession of the court those taxes which had been levied by judicial direction for the payment of judgments recovered against the city, — taxes which had been only partially collected. Those taxes were in a most legitimate sense charged with a trust and a trust for the complainants. The fund to be raised by the levies was set apart for a special purpose. It could be used lawfully for no other. The ordinances which directed the levies specified the amounts to be raised, and the judgment creditors for whose use the levies were made. Those creditors were, therefore, *cestuis que trust* in the fullest sense of the term, the legal interest alone being in the city. The case shows that this trust had been neglected and abused by the trustee. The taxes which it was the duty of the city as trustee to collect had been suffered to remain uncollected in great measure, and for an unreasonable time, and even the portions which were collected had not been paid over, as the writs of *mandamus* required. This breach of duty by the trustee had continued from 1875 to 1879. Had the trustee been a natural person, or a private corporation, no one would doubt the power of a court of equity to interfere and take the trust out of the hands of the faithless trustee, either by removing him and appointing another trustee, or by administering the trust by its own officers. It can make no difference that the city of Memphis was a municipal corporation. Its character as such does not affect the nature of its obligations to its creditors, or its *cestuis que trust*, or impair the remedies they would have if the city was a common debtor or trustee. While as a municipal corporation the city had public duties to perform, yet in contracting debts authorized by the law of its organization, or in performing a private trust, it is regarded by the law as standing on the same footing as a private individual, with the same rights and duties, and with the same liabilities, as attend such persons. Over its public duties, it may be admitted, the legislature has plenary authority. Over its private obligations it has not. *Bailey* v.

*The Mayor, &c. of the City of New York*, 3 Hill (N. Y.), 531 ; *Small* v. *The Inhabitants of Danville*, 51 Me. 359 ; *Oliver* v. *Worcester*, 102 Mass. 489 ; Dillon, Mun. Corp., sect. 39, and cases cited in the notes.

Moreover, if, as contended by the appellants, the city of Memphis ceased to have any legal existence on the thirty-first day of January, 1879, when the legislative act repealing the charter was approved, the case then became one of a trust without a trustee, pre-eminently fit for equitable interference. A court of equity will not permit a private trust to fail for want of a trustee. And this rule is applicable to cases in which a municipal corporation has been nominated the trustee. *Girard* v. *Philadelphia*, 7 Wall. 1 ; *Philadelphia* v. *Fox*, 64 Pa. St. 169 ; *Montpelier* v. *East Montpelier*, 29 Vt. 12. In such cases, as in cases where a natural person or a private corporation is the trustee, and the person has died or the corporation has been dissolved, the court will appoint a new trustee, or execute the trust by its own officers or agents. In Potter on Corporations, sect. 699, it is said : " Where in any way the legal existence of municipal trustees is destroyed by legislative act, a court of equity will assume the execution of the trust, and, if necessary, will appoint new trustees to take charge of the property, and carry into effect the trust." In High on Receivers, 304, 305, it is said : " When creditors of a corporation have a charge upon a particular fund, in the nature of a trust fund, the mismanagement or waste of such fund by those intrusted with its control will warrant the appointment of a receiver."

So in *Batesville Institute* v. *Kauffman* (18 Wall. 151), this court, when speaking of the power of a court to appoint a new trustee in place of one deceased, said : " It is, however, within the power of a court of equity to decree and enforce the execution of the trust through its own officers and agents, without the intervention of a new trustee." citing Story's Equity, 976–1060.

Without further citations, which might easily be made, enough has been said to show that in the present case the Circuit Court was authorized to seize by the hands of its own receiver, for administration, those taxes which had been levied

specially for the payment of judgments recovered, in regard to which the city had occupied the relation of a trustee, at least practically.

Much of what I have said is equally applicable to the taxes which the city during its corporate existence had levied for the payment of interest on its debt, or for other purposes, and had not collected, and generally to all the assets of the city of every character, except such as I have heretofore mentioned, held for strictly public uses, such as public buildings, parks, fire-apparatus, &c. These general assets, though not held specially in trust for any particular creditors, were held by the corporation, in a very just sense, for the benefit of its creditors. The corporation having ceased to exist, it was perfectly within the power of the Circuit Court, sitting as a court of equity, to seize all its assets to which its creditors have an equitable or legal claim, and hold them for administration. Such assets cannot be appropriated to any other use until the creditors are satisfied. Even legislative action cannot divert them to other uses. These principles have been fully recognized, and particularly in the code of Tennessee. Referring to dissolved corporations, that code enacts (sect. 3426): " The court shall appoint a receiver, with full power to take possession of all the debts and property, and sell and dispose of, collect and distribute, the same among the creditors and other persons interested, under the orders of the court." This statute is only an affirmance of equitable remedies before acknowledged and found in text-books. Thus, in Potter on Corporations (sects. 714, 715), the rule is thus stated : " Whatever technical difficulties exist in maintaining an action at law against a corporation after its charter has been repealed, in the apprehension of a court of equity there is no difficulty in a creditor's following the property of the corporation into the hands of one not a *bona fide* creditor or purchaser, asserting his lien thereon, and obtaining satisfaction of his debt." In *Broughton* v. *Pensacola* (93 U. S. 266), the language of the court was : " The ancient doctrine that, upon the repeal of a private corporation, its debts were extinguished, and its real property reverted to its grantors, and its personal property vested in the State, has been so far modified by modern adjudications that a court of equity will now

lay hold of the property of a dissolved corporation and administer it for the benefit of its creditors and stockholders. The obligation of contracts, made whilst the corporation was in existence, survives its dissolution; and the contracts may be enforced by a court of equity, so far as to subject, for their satisfaction, any property possessed by the corporation at the time. In the view of equity, its property constitutes a trust fund pledged to the payment of the debts of creditors and stockholders; and if a municipal corporation, upon the surrender or extinction in other ways of its charter, is possessed of any property, a court of equity will equally take possession of it for the benefit of the creditors of the corporation."

So in *Curran* v. *Arkansas* (15 How. 307), it was said, " The assets of a corporation are assets for the payment of its debts, and are trust funds for that purpose." See also *Maenhout* v. *New Orleans*, 2 Woods, 108-114.

In Dillon on Municipal Corporations, sect. 37, the rule is stated thus: " Where the legal existence of a municipal trustee is destroyed by legislative act, a court of chancery will assume the execution of the trust, . . . take charge of the property, and carry into effect the trust."

In *Beckwith* v. *Racine* (7 Biss. 142) the court said: " Where a contract cannot be enforced at law against a municipal corporation owing to a repeal of its charter, and there are any funds, a court of equity will administer them for the benefit of creditors."

It is hardly necessary to say that the private property of a municipal corporation is so decidedly stamped with a trust in favor of its creditors, that it is incapable of being diverted to other uses by the legislation of the State. This law has again and again been declared. *Grogan* v. *San Francisco*, 18 Cal. 590, by Field, J.; *Board of Park Commissioners* v. *Common Council of Detroit*, 28 Mich. 228; *City of Dubuque* v. *Ill. Cent. Railroad Co.*, 67, 68.

The citations I have made (many others might be added) are sufficient to maintain the jurisdiction of the Circuit Court in this case, and its power to lay hold, by its receiver, of all the property and assets belonging to the city of Memphis, when its charter was repealed, including all taxes levied and

collected but undisposed of, and all taxes uncollected, all property purchased by the city in sales for taxes, and all assets of every description, except the property above mentioned held for strictly public uses, and also to administer such assets for the benefit of the creditors.

I do not contend that a court of equity can itself *levy* a tax. I agree it cannot, and so this court has decided. *Rees* v. *City of Watertown*, 19 Wall. 107. The argument which has been submitted to prove that the Circuit Court has no such power is quite unnecessary. It is inapplicable to the case we have in hand. The complainants' bill asked for no assessment or levy of a tax, and the Circuit Court decreed none. The levy of a tax is a very distinct thing from the collection of a tax already levied. The levy is generally a legislative or a quasi-judicial act. The collection of a tax after it has been levied is a ministerial act, which a court has power to enforce.

I have said, and I earnestly maintain, that the taxes which the city of Memphis had levied before the repeal of its charter, some of which were collected, but remained on deposit or undisposed of, and some of which are not collected, are assets of the corporation, which its creditors have an equitable right to have seized and appropriated to the payment of the corporate debts. By the lawful assessment and levy of a tax the taxpayer becomes a debtor to the municipality, and the debt may be recovered, like other debts, by a suit at law; or, when it is a lien, by a bill of equity. Such certainly is the law of Tennessee. *Mayor & Aldermen of Jonesboro* v. *McKee*, 2 Yerg. (Tenn.) 167; *Rutledge* v. *Fogg*, 3 Coldw. (Tenn.) 554; *Marr* v. *The Bank of West Tennessee*, 4 id. 487. The imposition of a tax creates a legal obligation to pay. In *Savings Bank* v. *United States* (19 Wall. 227), this court ruled that, independently of an act of Congress authorizing them, suits at law may be maintained by the United States to recover taxes assessed and levied. The statutes of Tennessee leave the matter in no doubt, so far as it relates to the rule in that State. And in the Civil Code, sects. 554, 555, it is enacted that assessed taxes shall be and remain liens upon all taxable property of the person against whom they are assessed. If they are liens, they are enforceable in equity.

It is passing strange if those claims, which, by the law of the State, are debts due to the city and collectible as such by the ordinary processes of law, are not assets of the corporation for the payment of its debts. And if they can be collected in the State courts, I am unable to see why the Circuit Court of the United States, sitting in Tennessee, and having jurisdiction, may not also collect them, or seize them as assets of an insolvent and dissolved corporation. I cannot perceive why they are not as truly assets of the city as are the assessments made by an insolvent mutual insurance company its assets. Nobody would deny that such assessments could be seized by a court of equity, through the agency of its receiver, and administered for the benefit of the creditors of the company. No difficulty would be found in the way of collecting them.

Thus far I have considered the merits of the case as unaffected by the legislation of the State, heretofore spoken of, except so far as that legislation repealed the charter of the city. That legislation was certainly very extraordinary, and quite unprecedented in the history of the country since the Federal Constitution was adopted. Whatever may have been its purpose, and however carefully that purpose may have been disguised, if it can be sustained, its *effect* is to obstruct, if not totally destroy, all the power of the creditors of the city to enforce payment of the debts due them. They are remanded to the mere grace and favor of the legislature. If ever legislation impaired the obligation of contracts, this did. If it had been simply the repeal of the municipal charter, no one could have called it in question. Undoubtedly the legislature of a State may amend or dissolve the organization of a municipal corporation, so far as its governmental powers are concerned. But no legislature can so dissolve a corporation, municipal or private, as to destroy or impair the obligation of any contracts the corporation may have made. Dillon, Mun. Corp., sect. 114 ; *Von Hoffman* v. *City of Quincy*, 4 Wall. 535. Creditors of municipal corporations are as completely within the protection of the Constitution as any other creditors. What is meant by "impairing the obligation of a contract" is well defined. Embarrassments thrown by a statute in the way of enforcing payment of a debt, or a statutory substitution for the obligation and lia-

bility of the debtor, or the will of some other person, though that person be a State, have not heretofore been recognized as consistent with the Constitution. The protection afforded by its provisions and its prohibition of certain State legislation relate, not to the mode and form of State statutes, but to their operation or effect.

In the view I take of the case, however, it is unnecessary to decide how far the legislation of the State is constitutional, or how far it is in conflict, if at all, with the paramount law which controls alike State and natural persons. Certainly the appointment by the governor of Meriwether as a receiver and back-tax collector can have no effect upon the prior appointment of Latham by the Circuit Court. It cannot confer upon Meriwether any right to interfere with the performance of the duties which the court had imposed upon its receiver. The jurisdiction of the Circuit Court had fully attached, and, by the action of its receiver, the assets of the city, the tax-bills and books, had come into the possession of the court before Meriwether's appointment. That jurisdiction and possession cannot be divested by any State action. The injunction decreed against Meriwether was, therefore, I think, properly adjudged.

I have thus stated, as briefly as possible, my reasons for dissenting from the action of the majority of the court, reversing the decree of the court below and ordering a dismissal of the complainants' bill.

I think the decree should be modified by striking out so much of it as subjects to the payment of the debts of the city the property held exclusively for public uses, and so much as subjects to such payment the private property of all persons within the city's territorial limits.

Thus modified, I think the decree should be affirmed.