## Case No. 9,165.

### MARTIN v. SOMERVILLE WATER POWER CO.

[3 Wall. Jr. 206; 5 Am. Law Reg. 400; 27 How. Prac. 161; 37 Hunt, Mer. Mag. 64; 13 Leg. Int. 332.][1]

Circuit Court, D. New Jersey. Oct. Term, 1856.

CONSTITUTIONAL LAW—CONTRACTS—ACT OF LEGISLATURE—MORTGAGE—REMEDY DESTROYED.

The constitution of New Jersey adopted in 1844 limits the powers of the legislature and separates them from those of the judiciary, and adopts the prohibitions of the constitution of the United States against laws impairing the ob-

[1] [Reported by John William Wallace, Esq., and here reprinted by permission. 37 Hunt, Mer. Mag. 64, contains only a partial report.]

ligations of contracts, and further, prohibits the depriving a party of any remedy for enforcing a contract which existed when the contract was made. Hence, where the legislature passed an act for the relief of the creditors of a manufacturing corporation, providing that certain persons should be authorized to sell all property mortgaged for the payment of bonds, at public sale, to the highest bidder, free from all encumbrances, and after paying certain expenses and costs, should distribute the proceeds to the corporation's creditors, according to the priorities of their several liens, it was held that such legislation was unconstitutional, by reason of its impairing the obligation of the contract between the mortgagors and the mortgagees, and depriving the mortgagees of a remedy which existed at the time the contract was made.
[Cited in State v. Assessors of City of Rahway, 43 N. J. Law, 340.]

The Somerville Water Power Company, incorporated under the laws of New Jersey, and doing business in that state, issued; in 1848, to different persons, a number of negotiable bonds, payable in 1853, and amounting in all to $50,000; and to secure their payment, executed (as under its charter it had power to do) a mortgage of all its real estate, property and franchises to trustees for the benefit of the bondholders; one of the conditions of the bonds being, "that if default should be made in the payment of the $50,000, or any part of it, it should be lawful for any holder to enter upon the premises, and to sell and dispose of them, and of all benefit and equity of redemption of the corporation, and to make a good and sufficient deed, &c., to the purchaser in fee simple, and out of the money arising from such sale, to retain the principal and interest which shall then be due on the said bond or obligation, together with the costs and charges of advertisement and sale of the premises." The title to the lands and property of the company having been encumbered by judgments, and embarrassed by decrees, sales and conveyances subsequent to this mortgage, the company or its assigns, and some of its creditors, sought the aid of the New Jersey legislature to enable them to put things on a new and better basis, and with that view to clear off all liens and make a perfect title to the property. For these purposes two acts of assembly (Acts of 10th and 18th of March, 1856 [Laws 1856, pp. 193, 393]) were passed. Taken together, they recited that certain persons had been appointed receivers of the property in a suit in the court of chancery of the state of New Jersey, to protect and superintend the real estate, property and franchises of the said company; that the concerns and interests of the company had become so involved in complicated difficulties and embarrassments, that the parties interested therein as creditors and stockholders could not have full and satisfactory relief, without protracted and expensive suits in the courts of law and equity. They recited further that it was represented by the parties interested in the property and affairs of the company, that the company was abundantly able to pay off and satisfy every just claim against it, and that a favorable oppor-

tunity was now presented to sell and convey its property, and that the interests of creditors and stockholders would be promoted by a sale of its real estate with all its franchises and works clear of all encumbrances, and had prayed for legislative aid in the premises. They then enacted—First. That the receivers might sell the real estate, franchises and works of the company, &c., at public sale, to the highest bidder, free and clear of all encumbrances, and free and clear of all mortgages, judgments and other liens whatever. Second. That these receivers might then deduct from the proceeds of such sale all reasonable allowance for commissions and services heretofore rendered by them as such receivers, and pay out of said proceeds all expenses by them incurred in effecting and consummating such sale. and all such costs and expenses as have heretofore been incurred in a suit pending in the court of chancery of New Jersey, wherein they had been appointed receivers.[2]   Third. That after the same were so paid, the receivers should next, out of the proceeds, pay off and satisfy all just and lawful debts, due from said company to any creditor or creditors, in the order of priority in which they might lawfully stand of record, and after the payment of such debt or debts of record should, out of the balance, pay and satisfy all other just and lawful debt or debts which were not of record, if said balance was sufficient for that purpose, and if not sufficient, then in proportion to the respective amounts of such debts or claims, and after the payment of all said last mentioned debts, should ascertain by due and legal evidence, who, as contributors to the property, franchises and work of said company, or as stockholders in the same, were entitled to the balance of said proceeds, and in what proportions, and should pay to such persons their respective proportions of such balance. Fourth. That the receivers should have power to subpoena and examine witnesses, touching the duties and trusts reposed in them by these acts, and should make report to the chancellor of the state. of what they did in the premises; and that any person aggrieved by their proceedings should be at liberty to file exceptions to such report in respect to his own particular interest therein, which exceptions should abide the final decree of the chancellor to be made therein.

Under these acts, the receivers sold the whole of the mortgaged property for $50,000; the bonds never having been paid, and now amounting with interest to $60,000. Before the sale was made, however, the complainant who held some of the bonds which he had bought in common course in the New York market, and on which bonds default had been made in the payment of both interest and principal, filed this, his bill in this court for the foreclosure of the mortgage, and a sale

of the property, or so much thereof as might be necessary to pay the amount due on his bonds; and for an injunction to restrain the receivers from proceeding any further under the acts of the legislature already mentioned. The constitution of New Jersey adopted in June, 1844 (article 3, § 1), says: "The powers of the government shall be divided into three distinct departments—the legislative, executive and judicial. And no person or persons belonging to or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others," &c. It says again (article 4, § 3): "The legislature shall not pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made." The constitutionality of the acts of assembly was, therefore, the point in question.

W. L. Dayton and A. O. Zabriskie, for the company, referred to many legislative acts of the state of New Jersey, which showed that from the foundation of the province a species of chancery jurisdiction had been exercised by the legislature; which acts, though often operating to substitute, against the creditors' will, one fund for another, had, nevertheless, never been regarded as impairing the obligation of contracts, or in any way unconstitutional; the main purposes of the contract under a new form being still kept in view. Potts v. Trenton Water Power Co., 1 Stockt. [9 N. J. Eq.] 593, was such a case. There the Trenton Water Power Company owed much money secured by mortgage, which the mortgagees were not pressing; and became insolvent. A receiver was appointed at the instance of some creditor; a subsequent one perhaps. But the receiver could make no sale free of liens; and the legislature passed an act to give him power. He did sell, professing to sell free of liens, and his sale under the act was declared to have discharged the liens. Of course the remedies of the mortgagees had been violently taken away; but the proceeds having been paid into chancery and so substituted in the place of the land, the legislative act was declared by the court of errors and appeals to be constitutional.

After argument by Mr. Ransom and by the complainant in person, the court's opinion was given by

GRIER, Circuit Justice. [The demurrer to the bill in this case has been entered for the purpose of having a final hearing and judgment of the court on the validity of the act of the legislature of New Jersey, authorizing the receiver to sell the premises in question free and discharged from the lien and estate of the mortgagees.

[It is contended that this legislation is forbidden both by the constitution of the state and that of the United States.][3]

---

[2] Of this suit the complainant had had no notice, and was not a party to it.

[3] [From 5 Am. Law Reg. 400.]

Previous to the 29th of June, 1844, the state of New Jersey was governed by the old colonial constitution, adopted on the 2d of July, 1776. This contained no bill of rights nor any clear limitation of the powers of the legislature. The history of New Jersey legislation exhibits a long list of private acts and anomalous legislation on the affairs of individuals, assuming control over wills, deeds, partitions, trusts and other subjects usually coming under the jurisdiction of courts of law or equity. Consequently the decisions of the courts of New Jersey on questions arising under the old constitution, cannot be cited as precedents applicable to the present one, which carefully defines and limits the powers entrusted to the legislature, the executive and the judiciary. It is very desirable that the constitution of a state should be construed by its own tribunals, and we regret that the researches of counsel have not furnished us with such precedents. The case of Potts v. Trenton Water Power Co., 1 Stockt. [9 N. J. Eq.] 592, has reference to an act passed before the adoption of the present constitution. That act was declared by the court "not to impair the obligation of any contract, and to be remedial only." The first mortgagees gave their assent to the sales made under it, and others could not object to it as made without their authority. In this important respect it differs from the present case, and cannot be relied on as a precedent.

The validity of this act has been challenged on several grounds. If found invalid on any one, we need not examine the others. The constitution of New Jersey has not only carefully limited the powers of the legislature, and separated them from those of the judiciary, but it adopts the prohibitions of the constitution of the United States against "ex post facto laws, and laws impairing the obligation of contracts," and with this addition, "or depriving a party of any remedy for enforcing a contract which existed when the contract was made." It is not contended that this act comes under the category of an "ex post facto law;" and if it be merely remedial in its character, as defendants contend, there can be no valid objection to it under this head of the constitution.

Does it impair the obligation of the contract between the mortgagees and mortgagors, or deprive the mortgagees of any remedy which existed when the contract was made? The act and supplement must be construed together as forming one act. It is entitled, "An act to relieve the creditors and stockholders of the Somerville Water Power Company," &c. It sets forth, in its preamble, certain representations, made no doubt by those who procured the act, showing plausible reasons for such legislative interference, but the validity of the act must be judged from its actual operation on the rights of parties subjected to it, and not by the pretences put forth by the preamble. This may show that the legislature acted in good faith, and believing that their interference would wrong no one, but not that such was the actual result. Legislatures cannot be too cautious, when asked to interfere with special legislation for particular persons or particular cases, on ex parte representations. They cannot call all parties before them and judge upon a full hearing; this is for the courts. Their action may not always be unjust, but it may be and often is tyrannical and injurious.

Let us inquire what is the contract, and how is it affected by this act? The mortgagees of this property hold the legal title in trust for the several bondholders, who may properly be treated as the real mortgagees. They may be said in common parlance, to have a "lien" or "security" on the property mortgaged, but they have it by force of their legal title to the property. It is an estate in fee simple, defeasible only by the payment of the debt. When the condition of the obligation is broken, the mortgagees may enter on the premises and recover the rents, issues and profits thereof, till their debt is satisfied. If they see fit, they may appoint an agent or attorney, who may enter on the lands under their direction, and make sale of the same in satisfaction of the debt. This disposal of the mortgaged premises is to be made according to the discretion and judgment of the mortgagees, and not of another. No subsequent encumbrancer or assignee of the equity of redemption can divest their estate contrary to their will, unless by a tender of the debt due. They cannot be compelled, to suit the convenience of others, to put up the property to sale at a time or in a manner which might lessen or injure their security. Now by this contract the estate of the mortgagees is defeasible only by payment of the debt. But this act permits the receiver to dispose of their estate, and does not provide that the debt shall be first fully paid. It permits the receiver to sell for any sum, whether it be sufficient for such purpose or not. And the receiver has made a contract of sale for a sum insufficient by many thousands of dollars. This is making a new contract for the parties and impairing the obligation of the mortgage. It may be truly said, " 'tis not so written in the bond," The mortgagees may dispose of their security for less than the amount of their debt, but no other person can.

2. The obligation of this contract is moreover impaired by this act, in that it gives a precedence to certain indefinite costs and charges (not costs of the sale merely) to be paid out of the proceeds of the property before the mortgage debt. This is in direct contravention of the contract by which the estate was conveyed to the mortgagees free from all charges and encumbrances.

3. The mortgagees had, by their contract, a remedy to be used at their own option and discretion as to time and mode of sale, and by law they had the remedy of entry on the premises and receiving the rents and profits.

This act deprives them of both, contrary to the letter of the constitution of New Jersey, without invoking the aid of the cases of Bronson v. McHenry, 1 How. [42 U. S.] 311, and McCracken v. Hayward, 2 How. [43 U. S.] 611.

We have not thought it necessary to review the very numerous cases on this subject, or to attempt any metaphysical definition of what constitutes the "obligation of a contract;" as it is clear that any legislation which defeats the estate of the mortgagee, without payment or tender of the whole debt due on the bonds, which gives a preference to posterior liens, and which deprives the mortgagee of his remedy given by the covenants of his contract, as also that given by the law of the land, "impairs its obligation," and is contrary to the letter and spirit of the constitution of New Jersey. This act may be remedial as to the owners of the equity of redemption and those having liens against it, but the mortgagees have a right to say "non in hoc foedera veni"—we have never agreed to have our estate defeated to suit the convenience of others.

[See 9 Barb. 48.]

[The plaintiff is entitled to a decree making the injunction perpetual, but the defendants have leave to answer as to the other charges of the bill.] 4