STATE, EX REL. BENAJAH MUNDAY, v. ASSESSORS OF THE CITY OF RAHWAY.

1. The provision in the constitution of this state forbidding the legislature to pass any law depriving a party of any remedy for enforcing a contract which existed when the contract was made, applies to remedies against municipal corporations.
2. Where municipal authorities have power to levy a tax for the payment of debts, judgment creditors of the corporation, whose debts are

not collectible by execution, have a right to the exercise of that power, which the court will enforce by *mandamus*.

3. Where such a power existed at the time the debt was contracted, the remedy by *mandamus* is within the protection of the constitution.

4. A statute which merely regulates the mode of pursuing the remedy, without impairing its substance, is constitutional.

5. The supplement to "An act for the better regulation of proceedings upon writs of *mandamus*," approved March 3d, 1880, (*Pamph. L.* 1880, *p.* 102,) requires the court, before issuing such writs to compel the levy of a tax for the payment of municipal debts, to determine the highest rate of taxation capable of being imposed on the municipality without injury to the interests of the creditors of the corporation whose claims are not yet due, and forbids the court to direct the levying of any more than that rate will produce. Before the passage of this statute the relator was a creditor of the city of Rahway, the authorities of which had ample power to levy taxes to pay his debt. *Held*, that the enforcement of the law would deprive him of his constitutional remedy, and hence, as to him, the statute was invalid.

6. This statute is unconstitutional, also, because it aims to devolve upon the judicial department of the government an exclusively legislative function pertaining to the taxing power—the duty of determining the highest rate of taxation which can be borne by a municipality without injury to its creditors at large.

Argued at February Term, 1881, before Justices REED, PARKER and DIXON.

For the relator, *Alan H. Strong*.

For the defendant, *G. Berry*, with whom were *F. Bergen* and *T. N. McCarter*.

The opinion of the court was delivered by

DIXON, J.   The relator having recovered judgment against the mayor and common council of the city of Rahway, and served his execution thereon, in accordance with the supplement to the "Act respecting executions," approved March 27th, 1878, (*Pamph. L.* 1878, *p.* 182,) now seeks a writ of *mandamus* commanding the assessors of the city to assess and levy the amount due, pursuant to the directions of that statute.   Thereupon the municipality appears and requests that

the court will proceed in the premises only in conformity with the supplement to the "Act for the better regulation of proceedings upon writs of *mandamus*," approved March 3d, 1880. *Pamph. L.* 1880, *p.* 102. To this request the relator interposes two objections—first, that the act of 1880 is, as to him, a violation of paragraph 3, section 7, article IV. of the state constitution, which forbids the legislature to pass any law depriving a party of any remedy for enforcing a contract which existed when the contract was made; and, secondly, that the act can be executed only by this court's assuming functions which properly belong to the legislative department alone, contrary to article III. of our constitution.

As to the first of these objections, the defendant insists that the paragraph mentioned does not relate to remedies against municipal corporations; that such bodies are mere representatives of the sovereign power, and, consequently, can be sued only as the legislature may permit, and that this permission may at any time be revoked or modified, at legislative discretion. This position is untenable. The entire provision is: "The legislature shall not pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made." The juxtaposition of the last two clauses of this paragraph renders it highly probable, on settled rules of interpretation, that whatever contracts are guarded by the language concerning their obligation, are referred to by the language concerning the remedy. No reason appears for an opposite conclusion. But long before the provision preserving the obligation of contracts was placed in our constitution, it had become certain, by the decisions in *Fletcher* v. *Peck*, 6 *Cranch* 87, and in subsequent cases, that the same words in the federal constitution embraced contracts made by the state. In the absence of any clear indication to the contrary, we must infer that its use in our own organic law was designed to have the same scope. And such is the view expressed in several cases. *Martin* v. *Somerville Water Power Co.*, 3 *Wall., Jr.*, 206;

*Bridge Co.* v. *H. L. & I. Co.*, 2 *Beas.* 81; *Zabriskie* v. *Hack. & N. Y. R. R. Co.*, 3 *C. E. Green* 178; *Black* v. *D. & R. Canal Co.*, 9 *C. E. Green* 455.

Hence there seems no room to doubt that if, when one made a contract with the state, he was entitled to a remedy for its enforcement, the legislature would not have the right to deprive him of it.

But were this otherwise, it has never been held that municipal corporations possessed that immunity from suits upon contracts which the sovereign itself holds; and it is an every-day's occurrence that they are sued thereon as are private bodies. Moreover, the doctrine that their contracts are embraced within this constitutional provision is expressly recognized in *Rader* v. *Southeasterly Road District*, 7 *Vroom* 273, where Justice Depue says: " The only limitation on the operation of such repeal [of municipal charters] is as to creditors, that it shall not operate to impair the obligation of existing contracts, or deprive them of any remedy for enforcing such contracts which existed when they were made." The same idea is announced in *Vanderbeck* v. *Inhabitants of Englewood*, 10 *Vroom* 345, and the Chief Justice, in *Scaine* v. *Belleville*, 10 *Vroom* 526, declares it to be not in any quarter seriously questioned. The case of *Meriwether* v. *Garrett*, 102 *U. S.* 472, is cited as establishing the opposite principle. But it does not. It merely holds that, by the removal of the agencies through which the courts must act in enforcing the remedy of creditors, the legislature can practically destroy the remedy; thus illustrating the truth that, in some instances, even constitutional rights need for their maintenance the co-operation of all the departments of government. But while the agencies remain, I do not see how the judiciary can, in view of their constitutional obligations, fail to give effect to the lawful demands of suitors. *Wolff* v. *N. Orleans*, 103 *U. S.* 358.

The defendant next insists that the remedy which the relator is now pursuing did not exist at the time his contract was made. The contract consists of city bonds for the payment

of money issued in 1875; the exact remedy now sought was given by the statute of 1878. This averment, therefore, is formally true; but, in substance, it is false. That these bonds created an absolute debt of the corporation is conclusively established by the recovery of the judgment upon them. *United States* v. *New Orleans*, 98 *U. S.* 381. The city charter, (*Pamph. L.* 1865, *p.* 499,) in section 47, confers upon the common council power to raise by tax, in each year, such sum or sums as they shall deem expedient for (*inter alia*) the payment of the interest upon the city debt and such part of the principal thereof as may be due and payable, and, in section 48, makes it the duty of the assessors to assess the sums so required. Thus was granted to the council ample power to raise by tax the money necessary to pay the relator's debt, and the charter provided complete machinery for carrying this power into effect. The power and machinery continued to exist when the relator's bonds were issued, and still remain. Such a power in public officers becomes a duty whenever the enforcement of private rights depends upon its exercise; and the language by which it is conferred, though permissive in form, is considered as in fact peremptory. *Supervisors* v. *United States*, 4 *Wall.* 435; *City of Galena* v. *Amy*, 5 *Wall.* 705. Hence, upon the maturity of the relator's bonds, it became the duty of the council to direct a levy to pay them; and after the relator had, by judgment and unsatisfied execution, shown that he had no other means of payment, this court would, without doubt, have awarded to him a *mandamus* requiring the council to perform that duty. *Shackelton* v. *Town of Guttenberg*, 10 *Vroom* 660. "When creditors are unable to obtain payment of their judgments against municipal bodies by execution, they can proceed by *mandamus* against the municipal authorities to compel them to levy the necessary tax for that purpose, if such authorities are clothed by the legislature with the taxing power." Field, J., in *Meriwether* v. *Garrett, supra.* See, also, 2 *Dill. on Mun. Corp.* (3d ed.,) § 849, (685,) *and notes.*

Thus it appears that, at the time these bonds were issued,

one of the existing remedies—indeed, practically the sole remedy, (*Lyon* v. *City of Elizabeth, ante p.* 158,)—for enforcing their payment, was by *mandamus* directing taxes to be levied in the city for that purpose. This is the same remedy which the act of 1878 affords. That act merely makes a change in the mode of procedure. Instead of a writ to the council requiring them to direct the assessors to levy the tax, which would be the routine under the charter, the act of 1878 permits the writ to go directly to the assessors. Such a change in the method of pursuing the remedy the legislature could constitutionally make; and though it had tended somewhat to delay, rather than to expedite the creditor, it would not have invaded any of his rights: his remedy would have still been substantially preserved. Clearly, therefore, although the relator is pursuing his remedy under the act of 1878, it is proper for him to insist that it is the same remedy as he had when his contract was made.

It remains to consider whether the act of 1880, if enforced, would deprive him of that remedy.

This statute requires the court to ascertain—1: the total indebtedness of the municipal corporation, the time when payable and the rate of interest payable thereon; 2: the real value for purposes of taxation of the taxable property within such corporation; 3: the amount required to be raised within such corporation for necessary expenses for municipal and other purposes during the current year; and to determine, 4: the highest rate of taxation capable of being imposed on such corporation without injury to the interests of the creditors of the corporation whose claims are not yet due. Then the *mandamus* must direct the raising of no more than the highest rate so determined will realize; and the sum so raised is to be brought into court and distributed *pro rata* among the relator and such other judgment creditors of the corporation as shall apply and make proof of their judgments. This process is to be repeated annually until the claims so proved are satisfied.

It is impossible to give effect to this legislation consistently with the relator's former rights. Its central feature is the

protection of the interests of creditors whose claims are not yet due. Before its passage, the court, on the application of the relator, would have considered only the amount of his judgment, and would have commanded that to be raised, regardless of outstanding debts. In *City of Galena* v. *Amy*, 5 *Wall.* 705, an effort was made to restrain the court from issuing a *mandamus* for the levy of a tax to satisfy a judgment, because of the diminished revenues of the city and the disproportionate magnitude of its debt. But the court declared: "We can give no weight to considerations of this character when placed in the scale as a counterpoise to the contract, the law, the legal rights of the creditor and our duty to enforce them." Such was the language of the Supreme Court of the United States concerning a suitor who had no rights in his remedy save as they inhered in the obligation of his contract. With less hesitation, if there could be any hesitation in either case, would it be applicable in a court where the specific remedy is as inviolable as the contract itself. But, according to this statute, these considerations thus ignored are to be held paramount to the relator's demands. He who before was, among creditors, preferred in right because first in time, must now be subordinated to those whose unripened claims should naturally be postponed to his debt. Thus the act would strip him of his priority, and attempts what, in *Martin* v. *Somerville Water Power*, 3 *Wall., Jr.*, 206, was decided to be beyond legislative power. It is as if the legislature enacted that no execution should issue to enforce a pre-existing judgment to the prejudice of the interests of creditors whose claims were not yet due. Certainly no one would contend that such a law could be valid; nor would it be saved from invalidity because it substituted for the absolute right to execution a conditional and less advantageous remedy. A law, to be forbidden, need not deprive the party of *all* remedy; it is enough if it take away *any* remedy to which he was entitled. And by the term "remedy" is here meant, not the form, nor perhaps the *forum*, (*Newark Savings Ins.* v. *Forman*, 6 *Stew.* 436,) in which the creditor is to seek re-

dress, but the substance of his right to resort to the person or any property of his debtor for satisfaction. *Rader* v. *Southeasterly Road District*, 7 *Vroom* 273.

But it is suggested that *Meriwether* v. *Garrett, ubi supra,* gives countenance to the idea that private property in cities does not constitute a fund to which corporate creditors have any right to look for payment of their debts. We do not so understand that decision. The second resolution of the court, " that private property of individuals within the limits of the territory of the city cannot be subjected to the payment of the debts of the city, except through taxation," plainly implies that, through taxation, it may be. The opposite inference would be contrary to all previous decisions. Clearly, creditors have the right to resort to such property if the power of taxation exists in subordinate bodies for its enforcement, and if the right and power were cotemporary with the inception of their debts, they become a constitutional remedy. The statute of 1880, by denying this right to the relator and conceding to him, instead, a right to claim the exercise of the power of taxation only so far as may not injure the interests of other creditors, aims to destroy the substantial value of his remedy. Indeed, if necessary, it would not be difficult to show that it goes even further, and impairs the obligation of the contract; for, after some wavering, the Supreme Court of the United States has at length declared, in *Louisiana* v. *New Orleans*, 102 *U. S.* 203, " The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tends to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened. The Latin proverb, *qui cito dat bis dat*—he who gives quickly gives twice—has its counterpart in a maxim equally sound—*qui serius solvit, minus solvit*—he who pays too late, pays less. Any authorization of the postponement of payment, or of means by which such postponement might be effected, is in conflict with the

constitutional inhibition." This censure is plainly applicable to the act of 1880 in its effect upon the relator.

Again, it is urged that the writ of *mandamus* is a perogative writ, which, without this statute, might be issued or withheld in our discretion, and consequently may now properly be denied, except on conditions which will meet the provisions of the act. But such was not the range of our discretion in the class of cases for which the writ is now invoked. The right of judgment creditors of municipal bodies to this writ was about as clearly defined as is that of any suitor to any writ which does not issue of course. The writ had become substantially a private remedy in these cases. The court was bound to allow it whenever the proper facts were shown, and those facts were not such as this law contemplates. If the legislature can control the discretion of the court as to the necessary facts, then it can deprive the party of his remedy; if the court yields to an attempt at such control, the same result is equally accomplished.

We are constrained to declare this act unconstitutional.

The second objection made by the relator to this statute seems to be equally well grounded; that it undertakes to cast upon the courts a purely legislative function, and so is invalid.

The third article of our constitution provides, "The powers of the government shall be divided into three distinct departments: the legislative, executive and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided."

"In the creation of three distinct departments of the government, and the apportionment of power among them, the authority to tax necessarily falls to the legislative." *Cooley on Tax.* 32.

"As a general rule, the taxing power has been treated by the judiciary as vested in the absolute discretion of the legislative bodies." *Sedg. on Stat. and Const. Law* 554.

And in the latest decision of the Supreme Court of the United States touching this subject, (*Meriwether* v. *Garrett,*

*ubi supra,*) all the judges concur in the view that the power of taxation is legislative, that the levying of taxes is not a judicial act, but one which belongs to the legislative department exclusively, to be performed upon considerations of policy, necessity and the public welfare.

The same doctrine has been frequently enunciated in our state courts. *State* v. *Newark,* 2 *Dutcher* 519 ; *State, Ruckman,* v. *Demarest,* 3 *Vroom* 528 ; *State, Gaines, pros.,* v. *Hudson Co. Ave. Com'rs,* 8 *Vroom* 12. See 2 *Dill. on Mun. Corp.,* § 737, (588), *note* 2, (*3d ed.*)

But by the law now under review, the court is required to determine what rate of taxation can be imposed on the corporation without injury to the interests of its creditors whose claims are not yet due. These claims aggregate something like $1,000,000, about forty per cent. of the taxable property in the city, and will mature in various amounts during the next eight years. The problem thus presented for solution involves considerations upon which the courts have never assumed to pass, and which seem to me improper for judicial investigation and determination. As against the relator, the interests of so large a body of creditors are identical, or closely interwoven, with the interests of the municipality. Whatever rate of taxation will injure the latter will jeopardize the former. The amount of tax which can be borne without material prejudice to the city depends upon the prosperity of its inhabitants, the inducements which the place affords to manufacturers, merchants, artisans, taste and wealth, whether its local government is honest, economical and public-spirited or the contrary, and other such matters of general concern. These are questions of fact, of which the courts cannot take judicial cognizance without proof, and if this statute is to be intelligently enforced, every creditor who seeks a *mandamus* must enter into a contest with the city to lay before us the truth concerning them by such evidence as is available. And when the truth appears, the point for determination will still be one to be decided, not by any known rules of law, but upon grounds of public policy ; what rate of taxation may, in view

of these facts, be imposed without working detriment to the community.     In *State* v. *Demarest, ubi supra,* the Court of Errors directly decided that the question whether the interests of the people of the state would be best promoted by levying a tax for bounty to volunteers, or by other measures, was one of which the legislature was the sole judge.     The question whether the interests of a city will be injured by levying a tax of $10,000 or $100,000 is of exactly the same character; and either the legislature or some legislative body to which it may be delegated, must decide it; but the delegation cannot be made to any branch of the judicial department.     " It is as incompetent for the legislature to confer the power to tax upon the judiciary as upon the executive."     *Cooley on Tax.* 34.     Courts can determine whether constitutional or legislative restraints and rules as to taxation have been observed, and whether any individual is called upon to pay more than his due proportion, and can compel subordinate legislative bodies to exercise the powers conferred upon them for purposes of taxation, but never has it been held that they could either assume or control the legislative function of deciding what sums the public interests require or permit to be raised.

We therefore are of opinion that a writ of *mandamus* should issue, commanding the assessors to levy a tax sufficient to pay the relator's judgment.     We think the relator is entitled to a peremptory writ; but if the defendants desire to bring a writ of error, an issue may be framed by an alternative writ, a return thereto setting forth the proceedings under the statute of 1880 and the facts thereby shown, and a demurrer to such return, with a judgment thereon in favor of the relator, and if such issue be framed and error brought with due promptness, proceedings upon the peremptory writ will be stayed till the determination of the court above.