STATE, EX REL. JAMES I. THOMPSON, v. JAMES T. WILEY ET AL., COMMISSIONERS OF TAXATION.

1. The commissioners of taxation appointed under the act of March 20th, 1884, (*Pamph. L., p.* 84,) have no power to levy taxes for any purposes other than those particularly specified in the act.
2. The commissioners are not the assessors intended by the supplement to "an act respecting executions," approved March 27th, 1878. *Pamph. L., p.* 182.

On application for a *mandamus* to compel respondents to levy a tax for the payment of relator's judgment.

Argued at June Term, 1884, before Justices KNAPP, DIXON and PARKER.

For the relator, *John W. Taylor.*

For the respondents, *Frank Bergen,* and *Wager Swayne* and *John F. Dillon,* (of New York.)

The opinion of the court was delivered by

DIXON, J.   The respondents are commissioners of taxation appointed for the city of Elizabeth, under "An act to provide and secure the raising of revenue for the execution of the public duties of maintaining public schools, preventing the destruction of property by fire, preserving the public health, supporting the poor, maintaining police and keeping the highways and streets in a safe condition for public use, within the limits of incorporated cities, towns and municipalities, in cases

where the local or municipal authorities fail to provide for the performance of such duties," approved March 20th, 1884. *Pamph. L., p.* 84.

The relator holds a judgment of this court against the city of Elizabeth, and now asks for a *mandamus* commanding the respondents to levy a tax for the payment of his judgment.

In our opinion the respondents have no authority to levy such a tax. All their powers seem to us to be derived from the statute under which they are appointed. The fifth section of this act specifically enumerates all the purposes for which they may impose taxes, and declares that they shall levy taxes for no other purposes, and that the taxes levied in pursuance of the act shall be applied solely to the purposes for which they were levied, and that it shall be unlawful to appropriate or use, or order or direct their appropriation or use for any other purpose or purposes whatever. Language could not be more explicit. The enumerated purposes do not embrace the paying of the relator's judgment.

The relator, however, urges that in connection with this act must be taken the supplement to "An act respecting executions," approved March 27th, 1878, (*Pamph. L., p.* 182,) which devolves upon the assessor of each municipal corporation of the state the duty, under certain circumstances, of levying taxes to pay judgments against the corporation, and that, by force of the two statutes together, these commissioners are charged with the duty cast upon the assessor.

This view cannot be adopted without doing violence to the plain words of the act of 1884, which, as we have seen, so rigorously circumscribe the commissioners' power, and there is no occasion, if even there were any warrant, for violating those provisions. Long before the statute of 1878 was passed there existed in the city of Elizabeth the office of assessor, to the incumbents of which the statute undoubtedly referred. That office still exists, in no wise changed by the act of 1884, and through it the relator is legally entitled to enforce his judgment.

Nor can we approve the suggestion that this limitation of

the commissioners' authority under the act of 1884 is unconstitutional as impairing the obligation of the relator's contract or depriving him of any pre-existing remedy. The legal duty of paying his debt and the legal means of enforcing that duty remain untouched. It may indeed be true that the necessity under which the city of Elizabeth labored, of resorting to the same machinery as the relator was entitled to employ, in order to levy some taxes which were absolutely essential to its existence, has been in great degree obviated by this Commissioners act, and thus the probability that the relator would find this machinery ready at his hand for collecting the judgment is lessened ; but this necessity formed no part of the creditor's rights, and the effect which its removal produces upon his situation is but an indirect result of the act of 1884, while it is only when legislation operates directly upon the contract or the remedy that it is prohibited by the constitution. *Wolff* v. *New Orleans,* 103 *U. S.* 358, 365.

But if the conclusion could be reached that it was unconstitutional thus to limit the authority of these commissioners, then I think the consequence would be that the whole statute must fall to the ground. For the legislature has, in unmistakable terms, declared that it designed to create these officials for the purpose of exercising a certain measure of authority and no more, and it has used such precise and positive language to asseverate its will that their power shall not transgress the bounds prescribed, that I am led to believe that if the question had been presented to the legislature whether it would confer upon the commissioners the power which we are now asked to command them to exercise, or would refrain from enacting the law at all, the latter would have been the course adopted. The limit of authority seems to have been intended to be an inseparable condition of the authority itself. Now, the power of taxation is legislative, and cannot be exercised otherwise than under the authority of the legislature. *Meriwether* v. *Garrett,* 102 *U. S.* 472. If, therefore, the legislature, in an original delegation of the taxing power, has declared that the power shall be wielded only in case it can be

Rosenfeld v. Einstein.

confined within designated bounds, and if the constitution forbids that it should be so confined, then the logical outcome of these principles must be that the attempted delegation *in toto* fails. *State, McCloskey, pros.,* v. *Chamberlain,* 8 *Vroom* 388.

The *mandamus* must be refused.

The rule for *mandamus* allowed on the relation of Theodore Runyon, presenting the same legal questions as are above decided, must also be discharged.